## Case No. 5,151a.

FULLINGS v. FULLINGS.

[3 N. J. Law J. 240.]

District Court, D. New Jersey.   July 1, 1880.

Guild & Lum, for complainant.
Elwood C. Harris, for defendants.

NIXON, District Judge. The bill is filed in this case by Robert M. Martin, assignee in bankruptcy of Edward Fullings, deceased, to recover twelve several bonds of the Atlantic, Tennessee and Ohio Railroad Company of the par value of five hundred dollars each, numbered respectively 4, 5, 6, 7, 8, 9, 10, 55, 56, 57, 58, and 59, with coupons attached, from the 1st day of November, 1863, alleged to be the property of the late bankrupt and which he fraudulently omitted from his schedule and withheld from the hand of his assignee in bankruptcy. It appears that the said Edward Fullings, being a resident of the town of Charlotte, in the state of North Carolina, on the 23th of May, 1868, filed a voluntary petition in the district court of the United States for the district of North Carolina, to be adjudged a bankrupt, and that such proceedings were had thereon; that an adjudication took place on the 9th day of June following; that on the 22nd of July the creditors first chose his son, Edward B. Fullings, assignee, and that upon his resigning the office on the 6th day of August of the same year, a new meeting of creditors was called for the 8th of October, 1868, when the complainant was duly chosen assignee. Shortly after the commencement of the proceedings in bankruptcy the said Edward Fullings left the state of North Carolina and removed to Irvington in the state of New Jersey, where he continued to reside until the month of September, 1877, when he departed this life, leaving a last will and testament, in which letters testamentary were first granted to his son Edward B. Fullings, and afterwards, upon his removal, to the defendant Abby Fullings, the widow of the testator. Whilst the said Edward B. Fullings was administering the estate of his father as executor, a controversy arose in the orphans' court in the county of Essex, between him and some

of the representatives of the estate, in regard to the ownership of the twelve railroad bonds in suit. The executor claimed them as his individual property, asserting that they had been transferred to him by his father in his lifetime, in payment of certain advances made by him, while the opposing party contended that they should be accounted for as assets of the estate. The orphans' court decided that they belonged to the estate. Pending the litigation, the assignee in bankruptcy brought this suit claiming that they were the property of Edward Fullings at the time of the filing of his bankruptcy petition, and had been fraudulently omitted from his schedule and withheld from him as assignee. Two questions are thus presented. 1. As to the ownership of the bonds when the bankruptcy proceedings commenced. 2. Whether the assignee is barred from bringing suit by the statute of limitation.

■ As to the first, the evidence shows that the bankrupt obtained these bonds in the month of May, 1865, from one John M. Springs, in payment of moneys due him from a former partnership of Fullings, Springs & Co., of which he was a member and a large creditor. Previous to filing the petition in bankruptcy, to wit, on the 21st of December, 1867, Fullings left ten of the bonds in the hands of Emerson Coleman, in the city of New York, subject to his own order. Coleman says he knows of no purpose for which they were deposited with him, except to be afterwards called for by Fullings. The remaining two had been pledged by the bankrupt with two of his creditors in New York, as collateral security for the payment of debts due to them respectively. Through the instrumentality of Coleman these debts were subsequently paid by Fullings and the bonds surrendered by the creditors to Coleman. On the 25th of February, 1869, the whole twelve were delivered by Coleman to the bankrupt, who continued in the possession of them to the day of his death, receiving for several years the annual interest accruing upon them. In the absence of all contradictory proof, I have no hesitation in holding that the deposit of the bonds with Coleman was a device of the bankrupt to get the property out of the reach of his creditors, and that under the deed of assignment the bankrupt was entitled to have and receive the same as assets of the bankrupt estate.

■ I do not find evidence of laches on the part of the assignee in bringing the suit which should bar him from a recovery at this late date. The action was commenced within a few weeks after the assignee discovered the fraud. He had had some knowledge of the existence of the bonds, and none appearing upon the sworn schedule of the bankrupt, he made inquiry of him and was led to believe that they were not the property of the bankrupt, but belonged to his son. There is no proof that the assignee living in North Carolina had any information of the acts of

ownership subsequently exercised by the bankrupt over the bonds in New Jersey. Nothing appears which ought to have put him on inquiry. The supreme court in Bailey v. Grover, 21 Wall. [88 U. S.] 342, held that where an action was intended to obtain redress against a fraud concealed by the party, or which from its nature remained secret, the bar of the statute of limitations did not commence to run until the fraud was discovered. Any other doctrine, said Mr. Justice Miller, speaking for the whole court, would make the law which was designed to prevent fraud the means by which it is made successful and secure. There must be a decree for the complainant, but as there is no evidence that the defendants, Abby Fullings, executrix, and George D. G. Moore, had any knowledge of the fraud, no costs are awarded against them.