VETTERLEIN *v.* BARNES, Assignee, etc.

(*Circuit Court, S. D. New York.* December 18, 1880.)

1. RIGHT OF SOLVENT PARTNER TO ADMINISTER ASSETS OF THE FIRM.
    The sole remaining solvent partner has the right to demand and take from his insolvent copartner the liquidation of the affairs of the firm.

2. SAME—WAIVER OF.
    This right to administer is a personal privilege, and if the solvent partner permit his insolvent partner, or the representative of his in-

solvent partner, to go on and administer the assets, he thereby waives his privilege.

3. SAME—LACHES—STATUTE OF LIMITATIONS—USE OF ASSETS OF OLD FIRM.

A firm holding assets of prior firms, in which the plaintiff was a partner, as liquidators, became bankrupt. The plaintiff, with full knowledge of the bankruptcy and of the adverse claim of the assignee to the assets, demanded, after about two years, an accounting and settlement of his interest in the old firms. *Held,* upon this suit, brought 10 years after the bankruptcy, claiming for the first time his right to administer the assets as sole solvent partner:

(1) That independently of the statute of limitations he had lost the right to administer by laches.

(2) That his claim upon any part of the collections made by the assignee from the assets of the firm was barred by Rev. St. § 5057.

(3) That the new firm having, with the plaintiff's consent, taken and used all the assets of the prior firms as their capital in business, the property was subject to the debts of the new firm.

*Charles F. Blake,* for plaintiff.

*Henry F. Wing,* for defendant.

*Saml. B. Clark,* Asst. U. S. Dist. Att'y, for the United States, a preferred creditor.

CHOATE, D. J. In February, 1871, Theodore H. Vetterlein and Bernard T. Vetterlein were adjudicated bankrupts in this court, and in April, 1871, the defendant, Demas Barnes, was duly appointed their assignee in bankruptcy and qualified as such. The bankrupts traded under the firm name of Th. H. Vetterlein & Sons, in New York, and under the firm name of Vetterlein & Co. in Philadelphia. The original bill in this case was filed in November, 1879. Both plaintiff and defendant are citizens of the state of New York. The bill alleges that the plaintiff was a partner in two other firms preceding the firm of Th. H. Vetterlein & Sons of New York. The first of these was a firm alleged to consist of Theodore H. Vetterlein, one of the bankrupts, B. Vetterlein, Henry Thurman, and the plaintiff, doing business under the firm name of Th. H. & B. Vetterlein & Co., which was dissolved April 30, 1865, in which the plaintiff's interest is claimed to have been, though not so alleged in the bill, from about the year 1862 to April 30, 1864, one-sixth part of Theodore H. Vetterlein's share of the profits, which was $37\frac{1}{2}$ per cent., and from April

30, 1864, to April 30, 1865, one-eighth of the whole profits of the firm. The second of these prior New York firms was one consisting of the two bankrupts and the plaintiff, under the firm name of Th. H. Vetterlein & Sons, which was formed on the dissolution of the earlier firm of Th. H. & B. Vetterlein & Co., and continued to do business until some time in the year 1867, when it was dissolved by the withdrawal of the plaintiff, and thereafter the bankrupt firm was formed and continued the business till the bankruptcy. The plaintiff also claims upon the proofs, though not precisely so stated in the bill, that he was a partner in two prior firms of Vetterlein & Co. of Philadelphia,—of the first from sometime in January, 1862, to July 6, 1869, when the firm was dissolved by the withdrawal of one of the partners, Charles A. Meniar, the firm consisting of Theodore H. Vetterlein, Charles A. Meniar, and the plaintiff; that upon its dissolution a new firm of the same name was formed, composed of Theodore H. Vetterlein and the plaintiff, which continued the same business till December 31, 1869, when it was dissolved, and a new firm of the same name, composed of the two bankrupts, continued the same business till its dissolution by bankruptcy. The plaintiff's interest in the first of these firms of Vetterlein & Co. is claimed to have been, until January 1, 1866, one-sixth of Theodore H. Vetterlein's share of the profits, which was four-fifths, and after that time 15 per cent. of the entire profits; and his interest in the business of the second firm of Vetterlein & Co. also 15 per cent. of the entire profits.

The bill further alleges that each succeeding firm received the remaining assets of the prior firm as liquidators; that all of each prior firms were solvent upon their dissolution; that there was, as to each of them, something still due to the plaintiff for his share of the profits; that funds or other specific property which constituted part of the assets of each of said prior firms came to the hands of the bankrupts, and that such assets were not entirely liquidated at the time of the bankruptcy; that the bankrupts held the same as liquidators only, and that some part of said assets came to the hands of

the defendant, their assignee in bankruptcy; that the defendant, under color of his title as assignee in bankruptcy, upon his appointment in April, 1871, took into his possession all the funds so held by the bankrupts, as liquidators, to administer the same as such assignee; that he has sold some of said assets, and now holds the proceeds thereof; that the defendant has in his possession over $40,000 of such funds so wrongfully collected and appropriated.

The defendant's answer, besides containing a denial of nearly all the averments of the bill, sets up as a defence the two-years' limitation contained in Rev. St. § 5057.

The proofs show that the plaintiff was a partner in the first firm of Vetterlein & Co. from January 1, 1866, till its dissolution July 6, 1869, and also in the second firm of Vetterlein & Co. till its dissolution December 31, 1869, and in the first firm of Th. H. Vetterlein & Sons from its formation May 1, 1865, to its dissolution December 31, 1867, his interest in those firms being the share of the profits of the business stated in the bill. The proof is not sufficient, in my judgment, to show that he was a partner in the firm of Th. H. & B. Vetterlein & Co. The proofs, on the contrary, show very clearly, I think, that he was not a member of that firm, but that, by an agreement between him and his father, Theodore H. Vetterlein, his father promised to give him one-sixth part of his, Theodore H. Vetterlein's, share of the profits from sometime in 1862 down to April 30, 1865. Not only is there no entry whatever in the books of the firm of H. & B. Vetterlein & Co. showing that the plaintiff had any interest therein as a partner, but it appears that the next succeeding firm, Theodore H. Vetterlein & Sons, No. 1, of which the plaintiff was a partner, became the liquidators of the former firm, and received and distributed, in money and other property, a large part of the assets of the late firm of Th. H. & B. Vetterlein & Co. among the partners, exclusive of the plaintiff, and had accounts with that firm and some of its members, which are entirely inconsistent with any right or claim of the plaintiff to be considered a partner in that house. Nor is the proof sufficient to show that the plaintiff was a member of Vetter-

lein & Co. of Philadelphia prior to January 1, 1866, although by a private agreement with his father he was entitled to receive from him a part of his, the father's, share of the profits prior to that time, and on the first of January, 1866, this share, in accrued profits, was transferred to his account and put into the business by him. The proof is not sufficient to establish the alleged agreement, upon the dissolution of Vetterlein & Co., that the plaintiff should receive all the collections from the assets of that firm which had been charged off to profit and loss until his claim against the firm was paid in full. If any agreement on the subject was made it appeared that it was in writing, and it was not produced, nor was its non-production sufficiently accounted for to admit parol evidence of its contents. The plaintiff failed to prove that there was any balance of profits due to him and still unpaid from any of said prior firms. It is proved that some of what once constituted part of the assets of some or all of the prior firms of which the plaintiff was a member were received by the defendant as assignee of the bankrupts, and have ever since his appointment been held by him as such assignee under the claim that they belonged to the estate of the bankrupts. The books of the prior firms that came into his possession with the assets and books of the bankrupts apparently showed that there was nothing due to the plaintiff, but that, on the contrary, he was indebted to said firms.

On the twenty-seventh of May, 1873, the plaintiff caused the following letter to be sent to the defendant by his agent: "I am instructed by Mr. Theodore J. Vetterlein to require of you an accounting and settlement of his interest in the firms of Vetterlein & Co. and Th. H. Vetterlein & Sons, as existing prior to his withdrawal, the assets of which firms came into your hands as assignee in bankruptcy. In default of your so doing, I am directed to institute legal proceedings to procure the same." On the second day of June, 1873, the plaintiff sent the defendant a letter by his agent, as follows: "Please oblige be by an acknowledgment of my communication of the twenty-seventh ultimo. If you will state to me in your answer the substance of what you asked of me person-

ally some days back, and send to me an order on James K. Hill, Esq., to permit me to examine the books now in his charge, I shall have no hesitation in furnishing you with such further *data* as you may require." On the third day of June, 1873, he wrote to the defendant, through his agent, as follows: "In reply to your note of this date, in which you say that 'in regard to any claim which you may represent against the Vetterlein estate in bankruptcy it seems to me that the proper course for you to pursue is to present it in the usual way to J. K. Hill,' I have to answer that I do not represent any claim against the estate of the Vetterleins in bankruptcy. The communication which I addressed to you on the twenty-seventh ultimo is explicit, and unless I have the answer asked for I shall be compelled to proceed as therein set forth." On the twentieth day of February, 1874, he wrote again to defendant, by his agent, as follows: "I beg to acknowledge the receipt of your favor of the eighteenth instant, in which you say you prefer to allow all disputed points at issue in the Vetterlein estate to remain in abeyance until the government case is disposed of, etc., and that you hope to hear very soon of some *definite* result in the United States case, and as you are enjoined from making any payment at present, no loss can accrue to me or to my client by reason of some little further delay. The fact of the pendency of the United States case, and that you are enjoined from making any payments, does not, it seems to me, prevent you from fully considering now the matter in question. That is all that is asked at present. If you bear in mind that my client has already waited over two years, you must admit it is not unreasonable that they are not satisfied to await the issue of a case in which they have not the least interest. To repeat, all that is asked now is a just and equitable consideration and some definite action."

Notwithstanding the demand for an account and definite action contained in these letters, and the refusal to postpone the matter as proposed by the defendant, the plaintiff took no other steps to enforce his alleged rights till about the first day of June, 1878, when, by his same agent, he wrote the defend-

ant as follows: "After an interview with Mr. Wing, I have concluded, as the representative of Mr. Theodore J. Vetterlein, to send you the annexed statement and accounts. I claim that, notwithstanding his protest, you have collected moneys and property belonging to Theodore J. Vetterlein amounting to $40,135.99. I am authorized and do now make demand for the payment of this sum. I may state that these statements and accounts only partially represent the claim of Theodore J. Vetterlein, and I shall serve you with additional accounts as soon as I can ascertain the details. I am ready and willing to give you any explanation you may desire, or to furnish you with all the requisite proofs. Please give me an acknowledgment of the receipt, and oblige," etc. The account inclosed was as follows:

"*Demas Barnes, Esq., to T. J. Vetterlein*, Dr.
 1870.

December 21—To amount as per statement hereto annexed, $19,187 91
    "       To cash balance on books of Vetterlein & Co.,    31 67
    "       To cash account, services rendered Th. H. Vetterlein & Sons in 1868 and 1869, as per agreement, in the purchase of tobacco,  -   5,000 00
    "       To collection of amounts charged to me by profit and loss, as per Journal 10, pp. 119–120,  - - - - - - -   15,916 31

I claim interest on the above items, 1, 2, and 3, from December 21, 1870, and on item 4 from the date of the collection of the several matters herein contained.
                                $40,135 99 "

The statement referred to in the first item of this account consists of two successive accounts, the first being an account headed "Theodore J. Vetterlein in account with Th. H. & B. Vetterlein & Co.," in which the plaintiff is credited with $17,701.87, being one-sixth of $106,211.27, claimed to be the profits of Theodore H. Vetterlein up to April 30, 1864, and also with $6,062.78, one-eighth of the alleged profits of the firm from May 1, 1864, to April 30, 1865, and he is charged with $838.03, the amount standing to plaintiff's debit on the books of the firm. The balance of this first account, $22,926.62, to the credit of the plaintiff, is carried forward into the second account, which is entitled "Theo. J. Vetterlein in

account with Th. H. Vetterlein & Sons." In this second account, which runs from October 23, 1865, to December 21, 1870, the plaintiff is charged with various payments in cash down to the twenty-eighth of November, 1870. He is credited with the above-mentioned balance of the account with the former firm; also with $2,622, his share of the profits up to December 30, 1865, which sum is credited to him on the books of the firm, also with the sums of $20 and $50 cash paid at different times to the firm, with which the books also credit him. This second account is made up with semi-annual rests, and the plaintiff is credited with interest amounting in all to $8,629.87. He is charged with one item which appears to be a payment by the firm on an individual adventure of his own, $4,904.51; also with $1,479.55, a transfer in Vetterlein & Co.'s ledger. It appears by that ledger that a debit balance to this amount against the plaintiff was balanced by charging the same to Th. H. Vetterlein & Sons, but no corresponding entry was made in the books of the latter firm. The credit balance of this second account is $19,187.91, and this constitutes the first item in the account rendered by the plaintiff to the defendant with the letter of his agent, dated June 1, 1878. The demand in said letter not being complied with, the plaintiff commenced this suit in November, 1879. This suit is sought to be maintained by the learned counsel for the plaintiff as a suit by a sole solvent partner to recover the assets of the firm of which he was a member, for the purpose of liquidating the affairs of the firm and distributing them according to the rights of the several partners and their representatives. The firms as to which this claim is made appear to have been solvent when dissolved, and, so far as appears, the plaintiff is a solvent partner of such of them as he was a member of, though there is no evidence that Bernard Vetterlein and Henry Thurman, who were partners in the firm of Th. H. & B. Vetterlein & Co., and Charles A. Meniar, of Vetterlein & Co., are not also solvent. It is, undoubtedly, the right of a sole remaining solvent partner to demand and take from his insolvent co-

partners the liquidation of the affairs of the firm; and this seems to be a personal right which the solvent partner cannot transfer. *Frazer* v. *Kershaw*, 2 K. & J. 496.

The assets of these several prior firms, so far as they had been kept separate and distinct, are admitted by the bill to have come to these bankrupts, and to have been by them, as liquidators, partly administered when they became bankrupt. The right of the plaintiff to assume their administration and liquidation, if he had such right, then at once accrued to the plaintiff against the bankrupts upon their failure, and before the petition in bankruptcy was filed. The letters of the plaintiff's agent in 1873, above recited, show very plainly that the plaintiff then understood and knew that the defendant had taken possession of all such assets, and was claiming to administer them as belonging to the estate of the bankrupts, and was reducing them to money. By the letter of twenty-seventh of May, 1873, he demanded an account and settlement as to his interest in the firms of Th. H. Vetterlein & Sons and Vetterlein & Co., and threatened a suit if his demand was not complied with. There can be no doubt from the evidence that as to all assets of these prior firms of which the assignee took possession, and of which he made any collections, his claim was adverse to that of this plaintiff, as a solvent partner seeking to recover them for himself, in order to liquidate which is the claim now made, although the claim made by the letters was not a claim for the possession of the assets in order to liquidate, but for an account and payment, out of the assets so collected, of the plaintiff's alleged interest or balance of unpaid profits in these several firms. It is noticeable, however, that in these letters of 1873 there is no reference to any claim of the plaintiff as partner in the firm of Th. H. & B. Vetterlein & Co., which now constitutes the larger part of his present claim. Not until the letter of June 1, 1878, was any claim made of an interest in that firm, and not until the filing of the amended bill in this suit—December, 1879—was this claim of a right to liquidate the assets of these prior firms made.

Whatever may have been the right of the plaintiff as a

solvent partner to obtain possession of the assets of his former
firm for the purpose of liquidation, if that right had been
reasonably demanded, I think it is clearly too late now for
him to exercise it as against the defendant. Theodore H.
Vetterlein, as one of the members in all these firms, though
a bankrupt, had some interest in all their remaining assets.
To put the case most favorably for the plaintiff, Theodore H.
Vetterlein and Bernard T. Vetterlein had possession of them
as liquidators, with an interest in them on the part of Theo-
dore H. Vetterlein. The assignee finding them in their pos-
session takes and holds them, having reason to believe and
claiming that they belonged to the bankrupts. The plaintiff
appeared on the books of these several firms as a debtor, with-
out apparent interest in these assets, even if they still kept
their distinctive character as assets of the firms to which
they originally belonged. The assignee administered on them
as assignee, denying the plaintiff's right to an account and
payment out them, which was alone then his claim. It seems
to me clear that, independently of the statute of limitations,
the plaintiff's right, if he ever had any, to administer on these
assets as the sole remaining solvent partner is lost by laches.
He knew of the bankruptcy. Then was the time for him to
assert this right, if he had it. He failed to do so. After about
two years he demanded an account of money collected and
payment of his pretended balances due, and after about ten
years from the time, if ever, his right to liquidate accrued to
him, he has brought suit. This right of a solvent partner is a
privilege which he may assert or may waive. If he permits his
insolvent partner or the representative of his insolvent part-
ner to go on and administer the assets, he waives his privi-
lege, and this, I think, the plaintiff has done. It seems to me,
also, that the two-years' bar under section 5057 applies to
this suit as a suit to recover these assets. The right really
accrued, if at all, against the bankrupts upon their failure, or
at any rate against the assignee as soon as he assumed con-
trol over these assets, upon his appoinment as alleged in the
bill.

There is, however, perhaps enough in the bill to support

the claim that the end may be maintained not to enforce the solvent partner's right to liquidate in case of bankruptcy of his copartners, but as a suit for an account and payment to the plaintiff out of collections made from the assets of the firm of a balance due to him from the firm. The collections made by the assignee out of any assets claimed to belong to any firm of which plaintiff was a member were all made more than four years before this suit was brought; nor is there any averment in the bill of any fraud or concealment which would prevent the statutory limitation of two years from running. Nor is there any evidence of such fraud or concealment. The assignee's claim of right to these assets under this assignment was notoriously asserted, within the knowledge of the plaintiff, from the beginning. Therefore the cases of *Bailey* v. *Glover*, 21 Wall. 342, and of *Zeller* v. *Eckert*, 4 How. 294, have no application. The plaintiff's claim, therefore, to any part of these collections is barred by Rev. St. § 5057. I am also satisfied that the plaintiff's claim against alleged assets of Th. H. & B. Vetterlein & Co. is wholly fictitious; that he never was a partner in that firm. It is stated in the bill that the balance due him on the thirtieth of April, 1865, when that firm was dissolved, and then payable, was $22,926.62, the same balance of account above referred to enclosed in the letter of June 1, 1878. The evidence shows that at that time there stood to the credit of Theodore H. Vetterlein, his father, on the books of the firm, $106,211.27. This $22,926.62 is alleged to have been part of what stood to his father's credit; and it is further alleged that the succeeding firm of Theodore H. Vetterlein & Sons, without the knowledge or assent of the plaintiff, passed this $106,211.27 on their books to the credit of his father, and that the firm of Th. H. Vetterlein & Sons collected more than $40,000 out of the assets of the prior firm, out of which this balance due the plaintiff should have been paid; that the firm held the money in trust for this purpose, and passed it over to the bankrupts subject to this trust.

As already stated, the plaintiff was a member of the firm of Th. H. Vetterlein & Sons. He is presumed to have known

and assented to the entries in their books. He has not shown the contrary. Those books show that Theodore H. Vetterlein's interest in the old firm, exactly as it stood on the books, was passed to his credit on the books of the new firm and constituted his capital therein, on which he was allowed interest. This was done with the plaintiff's consent. It is too late for him to claim now that it was a trust fund. Whatever interest he had in his father's share was put at the risk of the business of the new firm with his knowledge and consent. It does not appear that the firm of Th. H. Vetterlein & Co. made any profits, except that of which the plaintiff's share, $2,622, was passed to his credit. He drew out more than this, and the balance of $19,187.91, figured out as due from that firm, is only made out by starting with the balance of $22,926.62 as due to him from the former firm. Nothing could be plainer, it seems to me, than that the plaintiff acquiesced, as between himself and the former firm, in his father alone being entitled to the balance of the $106,211.27, which was not as assumed in the bill cash, but the amount of his father's interest in all the property of the firm as it stood on the books. I think the testimony of Theodore H. Vetterlein and the plaintiff himself, as to the conversation between them out of which alone his claim to have been a partner in the former firm arose, shows merely a private arrangement for paying him a part of his father's profits. And against the great weight of testimony disproving his membership in that firm, there is only the naked assertions of the bankrupts and some others, unsupported by any documentary proof whatever.

The claim made in the bill as to the plaintiff's interest in the assets, which were of the firm of Vetterlein & Co., of Philadelphia, is that the plaintiff is, by agreement, entitled to the entire proceeds of collections from assets charged in the books of the firm to profit and loss, and 15 per cent. of the items, till his entire claim is paid. The bill makes no discrimination between the two firms of that name which preceded the bankrupt firm of the same name, and treats them as one continuing firm down to December 31, 1869.

On the sixth day of July, 1869, when the first of these prior firms was dissolved, there was charged off to the several partners as loss the sum of $106.108.73, of which the plaintiff's share was $15,916.31. This charge of $15,916.31 entered into the final account, by which the plaintiff was on the books shown to be indebted to the firm in the sum of $1,479.53, on the thirty-first of December, 1870, which was balanced by a charge on the books to the New York house, but which the books of the New York house do not show that they assumed or agreed to pay. As stated above, I do not find the agreement to give the plaintiff the entire amount to be collected from the items charged to profit and loss proved, and therefore, even if it be assumed that the assets of the prior firm have continued to be their assets, distinguishable from the property of the bankrupt firm, and that some part of these items has been collected, the plaintiff would not be entitled to be credited with more than 15 per cent. of the amounts so collected. I am unable, from the fragmentary accounts and the evidence produced, to ascertain how the plaintiff's account with the prior firm of Vetterlein & Co. would stand if he were credited with his share of these collections; but I think the evidence shows that, however this may be, the new firm of Vetterlein & Co., which became bankrupt, took all the assets of the old firm as their capital in business, and used it as such; that this was done with the consent of the plaintiff; and it has been held that this subjects the property, in case of bankruptcy, to the debts of the new firm. *In re Mills,* 11 N. B. R. 76.

Therefore, because the plaintiff has no case upon the merits, and because his claim, if any, is barred by the statute, the bill must be dismissed, with costs.