ROBERT E. JENKINS, Assignee,

v.

JACOB ROSENBERG et al.

*Filed at Ottawa November 20, 1882.*

1. PURCHASER *from one holding deed, without notice it was a mortgage.* Although a deed absolute on its face may be only a security for the payment of money, still a purchaser from the grantee in possession, without notice that his vendor's deed was but a mortgage, will be protected in his purchase, and hold the property free from any equity of redemption.

2. NOTICE—*of fact that a deed was only a security.* The deposition of the grantor in a deed, filed in a case in which a subsequent purchaser from the grantor was a party, in which deposition the grantor testified that the deed was made free and clear of all incumbrances, the grantee agreeing to allow him a liberal price for the same on his indebtedness if the property was made clear, it not appearing from the deposition that the property should at any time, on any conditions, be reconveyed, if any notice at all, is not sufficient to charge such purchaser with notice that the witness' deed was intended as a security, the deposition itself failing to show that such was the fact.

3. A party proving a claim against the estate of a bankrupt is not chargeable with notice that a deed of the bankrupt was intended only as a mortgage, from the fact that the lots conveyed by such deed were embraced in his schedule of assets. The party so proving his claim was thereafter as much a stranger to the schedule as if he had never proved up his claim.

4. Where a party had conveyed lots by a deed absolute in form, but in fact intended only as a security, and afterward became a bankrupt, the presence of his assignee and the assignee's attorney at a meeting of creditors of the bankrupt, to take steps for the leasing of the lots pending litigation concerning them, such assignee not executing the agreement for leasing and making no declaration of any interest in the bankrupt, is not sufficient to put a subsequent purchaser from the bankrupt's grantee upon inquiry, and charge him with notice of the nature of the bankrupt's deed.

5. Although a deed absolute in form may have been given as a mortgage, to secure an indebtedness of the grantor, yet when the grantor, in his answer to a bill in chancery, sets up that he had conveyed the absolute title, and he and his assignee in bankruptcy afterward stand by and permit the grantee, without a word of dissent, to claim, mortgage and contract for the improvement and leasing of the property for a term of years, as the absolute owner, any person not having actual notice to the contrary will have the right to suppose such grantee the absolute owner, and in dealing with him as such he ought to be protected in the purchase of the property.

6. SAME—*notice to attorney when notice to principal.* It is doubtless true that notice to an attorney is notice to his client; but to make the notice such, the attorney must, at the time he is served, be engaged as an attorney in reference to the matter embraced in the notice.

7. LIMITATION—*under the Bankrupt law.* Where a person claims property adversely to a bankrupt long before he is adjudged a bankrupt, under a deed from him absolute in form, a bill in equity by the assignee, filed more than two years after his appointment, seeking to have the deed set aside and reach the property therein conveyed, is barred by the limitation provided in section 5057, Revised Statutes of the United States. In such case an adverse possession is not necessary to defeat the suit. It is enough that the defendant claimed an adverse interest in the property.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mr. W. T. BURGESS, for the appellant:

Purchaser with notice that his grantor held under a deed which was but a mortgage: Jones on Mortgages, secs. 804, 808; *Ellison* v. *Daniels,* 11 N. H. 274; *Parish* v. *Gilmanton,* id. 298; *Aymar* v. *Bell,* 5 Johns. Ch. 574; *Jackson* v. *Willard,* 4 id. 41; *Weeks* v. *Easton,* 15 N. H. 148; *Bell* v. *Moore,* 6 id. 205; *Smith* v. *Smith,* 15 id. 56; *Dearborn* v. *Taylor,* 18 id. 157; *Freebush* v. *Goodwin,* 24 Me. 427; *Delano* v. *Bennett,* 90 Ill. 533; *Merritt* v. *Bartholick,* 36 N. Y. 45; *Jackson* v. *Curtis,* 19 Johns. 325; *Wilson* v. *Troupe,* 2 Cow. 231.

Lœwenthal, the grantee of Kinney, had notice that the deed Kinney had from Walker was only a mortgage. A proceeding in bankruptcy is one suit, from its commencement to its end. *Sandusky* v. *First National Bank,* 12 B. R. 176; *Ala. and C. R. R. Co.* v. *Jones,* 7 id. 145; *In re York & Hoover,* 4 id. 479; *Sandusky* v. *National Bank,* 23 Wall. 289.

Proof of debt makes the creditor proving it a party to the bankruptcy proceedings. *Dingee* v. *Becker,* 9 B. R. 508; *Wilson* v. *Capura,* 41 Cal. 454.

The notice by letter served upon Rosenthal & Pence, attorneys of Lœwenthal, was notice to him and those claiming

under him.   *Williams* v. *Tatnall,* 29 Ill. 553 ;  *Harper* v. *Ely,* 56 id. 194.

Whatever is sufficient to put a prudent man on inquiry before purchasing, is notice to him of any outstanding rights and equities that such inquiry might have disclosed.   *Doyle* v. *Teas,* 4 Scam. 202 ; *Cox* v. *Milner,* 23 Ill. 479 ; *Henneberry* v. *Morse,* 56 id. 396 ; *Babcock* v. *Lisk,* 57 id. 329 ; *Richardson* v. *Stevens,* 71 id. 646.

So long as the relation of mortgagor and mortgagee existed between Walker and Kinney, the limitation could not commence to run in favor of either party.   2 Jones on Mortgages, sec. 1152.

As against the owner of the equity of redemption, the statute does not begin to run until the mortgagee takes actual and open possession of the mortgaged premises ; and it does not begin then if he holds under his mortgage title, and recognizes the mortgagor's right of redemption.   2 Jones on Mortgages, sec. 1156 ; *Miner* v. *Beekman,* 50 N. Y. 337 ; *Hubbel* v. *Sibley,* id. 468 ; *Knowlton* v. *Walker,* 13 Wis. 264 ; *Waldo* v. *Rice,* 14 id. 286 ; *Robinson* v. *Fife,* 3 Ohio St. 561 ; *Demorest* v. *Wynkoop,* 3 Johns. Ch. 129 ; *Green* v. *Turner,* 38 Iowa, 112 ; *Wilson* v. *Richards,* 1 Neb. 342 ; *Yarbrough* v. *Newell,* 10 Yerg. 376.


Messrs. ROSENTHAL & PENCE, for the appellees :

The grant of an estate in fee necessarily confers the power of alienation on the grantee.   1 Preston on Estates, 479.

A deed absolute in form, but originally intended as a security, may be converted into a conveyance absolute in fact by a change in mind of the parties to that effect, without any new deed, or by acquiescence or ratification.   *Carpenter* v. *Carpenter,* 70 Ill. 457 ; *Maxwell* v. *Patchen,* 29 id 42 ; *Ferguson* v. *Tallmadge,* 20 id. 581 ; *Pitman* v. *Sofley,* 64 id. 156 ; *Jenkins* v. *Pierce,* 98 id. 650.

Lœwenthal had purchased of Kinney for himself, Bauer, Schœllkopf, and the bank, without knowledge or notice of any kind of any interest of Jenkins, the assignee in bankruptcy of Walker. Actual notice must be clearly proved, and the proof should be of such character that to disregard it would be a fraud. *Pitman* v. *Sofley*, 64 Ill. 156.

The deposition of Walker in the Bauer suit is not constructive notice to Lœwenthal, as there is no proof that he ever heard Walker's evidence in that case, and because the matters in issue in the two suits are different.

. The doctrine of *lis pendens* is only upon the ground of public policy, and has the effect of constructive notice only in the particular suit, and does not operate beyond it. Freeman on Judgments, secs. 191, 200.

A party claiming under a decree is not chargeable constructively with notice of any paper, document or fact not a part of the issue in the case, although it may be on file in the case. Freeman on Judgments, sec. 200; *Dugan* v. *Follett*, 100 Ill. 590.

Walker's deposition in the Bauer case, if admissible, can only be taken as his declaration,—as notice it adds nothing by being sworn to. The declaration of a grantor after conveyance can not be received to impeach his grant. *Miner* v. *Phillips*, 42 Ill. 130; *Dunaway* v. *School District*, 40 id. 249; *Trimmington* v. *Kemmis*, 9 Cl. & F. 779; 1 Phillips on Evidence, (C. H. & E.) *327, note 104.

Walker's schedule of property in bankruptcy is not notice to Lœwenthal. He does not claim title under the proceedings in bankruptcy. It is not in the line of his title, and, besides, no one is chargeable with constructive notice of any instrument made subsequent to the record of the instrument under which he claims.

To bind a principal by notice to his attorney, he must be an attorney for the principal touching the subject matter of

the treaty.  Sugden on Vendors, chap. 24, secs. 2–7 ; 2 Leading Cases in Equity, pt. 1, pp. 134, 137, 138, 146, 66.

This suit was not brought within two years after the cause of action accrued to the assignee, and is, therefore, barred by the United States statute.  Rev. Stat. United States, sec. 5057 ; *Bailey* v. *Glover*, 21 Wall. 342.

Mr. JUSTICE CRAIG delivered the opinion of the Court :

This was a bill in equity, brought by Robert E. Jenkins, assignee in bankruptcy of Samuel J. Walker, in the circuit court of Cook county, on the 27th day of May, 1881, against Berthold Lœwenthal and others, to set aside and declare null and void two certain deeds conveying the title to lots 21 to 36 inclusive, and the south half of lot 37, all in block 10, S. J. Walker's dock addition to Chicago.  The first deed was executed November 16, 1880, by Eli Kinney and Martha S., his wife, to Louis Kuhn.  The second was executed November 16, 1880, by Louis Kuhn to Berthold Lœwenthal.  Each purports to convey the lots above described.  The title to the property conveyed by Kinney and wife to Kuhn had been obtained from S. J. Walker by Kinney under two warranty deeds, one dated January 9, 1873, (recorded January 21, 1873,) conveying absolutely lots 21 to 34 inclusive, and one dated January 9, 1874, (recorded February 19, 1874,) conveying lots 35 to 36, and the south half of lot 37.

It is alleged in the bill that the two deeds from Walker to Kinney, although absolute in form, were in fact made as security for an indebtedness from Walker to Kinney of about the sum of $110,000.  It is also alleged that Lœwenthal purchased with notice that the deeds were only intended as security.  It is also alleged in the bill that the indebtedness due from Walker to Kinney was not transferred to Lœwenthal.  The bill does not ask to pay off the indebtedness from Walker to Kinney, and redeem the premises from the mort-

gage, but prays that the title acquired by Lœwenthal be declared to be either a nullity, or to have been acquired and to be held in trust for complainant, as such assignee, and that Lœwenthal be required to convey to him, as assignee. The answer of defendants denied that the deeds from Walker to Kinney were not absolute in fact, and denied that defendants had notice that the deeds were made as security for money due from Walker to Kinney. The answer set up that Kinney, from the time Walker conveyed to him down to the time he deeded the property, claimed the deeds to him conveyed the absolute title,—that Kinney had been all the time in possession of the premises, claiming to own the same. The answer also alleged that Walker knew Kinney claimed to own the premises, and admitted him to be the owner; that Jenkins, from the time he was appointed assignee of Walker, on July 31, 1878, knew that Kinney claimed said premises adversely, and that both he and Walker acquiesced in such adverse claim, and pleaded the United States two years Statute of Limitations in bar of the relief claimed in the bill.

It appears from the record that on the 31st day of December, 1871, Samuel J. Walker, being the owner of the premises, executed and delivered a trust deed thereon to John G. Rogers, to secure the payment of three notes, which he made at the same time, for $50,000 each. These three notes and deed of trust were pledged to the International Bank, to secure five notes given by Walker to the bank, amounting in the aggregate to $54,498. These notes were owned by the bank, Bauer, Schœllkopf and Lœwenthal. After the making and recording of the trust deed to Rogers, Walker conveyed the premises to Kinney by the two warranty deeds above named. On the 29th day of August, 1874, Bauer, who held one of the notes secured by the trust deed to Rogers, filed his bill in the circuit court of Cook county to foreclose the trust deed, making all parties in interest, including Walker and Kinney, parties thereto. In this bill it was alleged that Walker, after

the execution of the trust deed, had conveyed the premises to Kinney by two warranty deeds. In his answer to this part of the bill Walker says: "This defendant further answering, admits the execution by himself and wife of the deeds to said defendant Eli Kinney, referred to in said bill, and claims and insists that said conveyances were for good and valuable considerations, and that the title to the premises therein described passed thereto to said Kinney, and that the same ought, in justice and equity, to stand discharged of any and all liens thereon." Kinney was also a party defendant to the bill, and service had upon him by publication of notice. He did not appear, but was defaulted, and a decree of sale rendered April 25, 1878. On the 24th day of June, 1878, the lots were sold; and bid off by Rosenberg, who purchased for the bank, Lœwenthal and Schœllkopf. On the 27th day of September, 1879, no redemption having been made, the master deeded the property to the purchaser, under the decree. On the 26th day of April, 1878, Walker filed his petition in bankruptcy. On July 31 Jenkins was appointed assignee, and a deed of assignment made to him. On the 18th day of June, 1878, Walker· sued out a writ of error from the Appellate Court to reverse the decree rendered in the Bauer case, and Jenkins was afterwards substituted in his place, with leave to prosecute the writ of error. While the writ of error was pending, Kinney, who had been brought in the foreclosure suit by publication, obtained from the court leave, under the statute, to come in and defend. Kinney filed an answer, in which he set up that he had purchased the premises, and was the owner in fee under the deeds from Walker, and that he was in possession. In November, 1880, Lœwenthal met Kinney at Cincinnati, and purchased his interest in the property for $20,000. Kinney at the same time executed a release of all errors in the suit then pending in the Appellate Court, and stipulated that a decree might be entered in the circuit court in the Bauer case, which was still pending, confirming

the decree which had originally been entered on the 25th day of April, 1878. Judgments were subsequently rendered in the Appellate and circuit courts in conformity to the stipulation.

If it be conceded that the two deeds made by Walker to Kinney were not intended by the parties to be absolute, but the conveyance was made merely to secure the payment of money due from Walker to Kinney, still, unless Lœwenthal had notice, before he purchased from Kinney, that the deeds were but mortgages, his purchase can not be defeated. The fact that the absolute title appeared to be in Kinney would justify any person in buying from him, and such a purchaser would be protected in his purchase, unless he had notice, before buying, that Kinney held merely as mortgagee.

It is first insisted that the deposition of S. J. Walker, which was taken in the Bauer case, was notice to Bauer, Lœwenthal, Schœllkopf, and the bank, that the conveyance to Kinney was a mortgage. It does not appear that the parties had any actual knowledge of what Walker had sworn to in his deposition. But conceding that they were chargeable with notice of the contents of the deposition taken in a case wherein they were parties, we do not think that the deposition of Walker establishes the fact that the deeds made by him to Kinney were mortgages. The evidence relied upon was as follows:

Q. "Was not said conveyance made to Kinney free and clear from all incumbrances?

A. "The deed was so made, they agreeing to allow me a liberal price towards my indebtedness if I would make the property clear. There was some sort of a statement given at the time, or shortly after, that as soon as I made it clear, they were to give up certain paper. I further state, that I stated to them that this property, instead of being bound for $150,000, there was an indebtedness on it claimed by the bank of $55,000, on this and other property. And I would further state, that the banks of Hoffman agreed, immediately after the panic, or directly after sale, knowing of it, of course,

as the sale was published in the papers, to release this property on the payment of $30,000, which would have left me a credit with Kinney & Co., on account of my indebtedness, of some $100,000, or more. I further state, that I conveyed this property to Mr. Kinney for the purpose of securing a settlement in case I could relieve it, they, at the time of my conveyance, not paying me any money consideration whatever, the object being to secure a settlement with them, if possible, on the most favorable terms possible."

This testimony falls far short of proving the deeds to be mortgages. It does not appear that there was any understanding or agreement that the property was to be, at any time or upon any terms or conditions, reconveyed to Walker, or that he had any right to redeem. On the other hand, it seems clear, from the first part of his evidence, that an absolute conveyance was made, and Kinney & Co. were to be the owners of the property, and that they agreed to allow Walker a liberal price for the property when he should clear it of the prior incumbrances. The fact that the amount Kinney was to give Walker for the property was not then fixed, does not militate against this view. If, therefore, appellees knew of this evidence, the deposition contains nothing which should prevent them from becoming purchasers from Kinney.

But it is said that in the proceedings in bankruptcy the lots in question were scheduled as a part of Walker's assets, and as Lœwenthal proved his debt in the bankrupt court, he is chargeable with notice of all that appears in the proceedings. There might be force in this argument if Lœwenthal was claiming title under the bankrupt proceedings; but he does not claim under those proceedings, and the mere fact that he proved a claim against Walker's estate, could not make him chargeable with notice of these proceedings. Lœwenthal was as much a stranger to the schedule of assets belonging to Walker's estate, as he would have been had he never proved any claim against the bankrupt.

It is next contended that the notice served on Rosenthal & Pence by Mr. Burgess, January 14, 1880, was notice to Lœwenthal that Kinney's interest in the premises was but a mortgage. It is, perhaps, true that notice to an attorney will be notice to the client; but to make the notice obligatory the attorney must, at the time, be engaged as an attorney in reference to the matter embraced in the notice. In this case, when the notice was served on Rosenthal & Pence they were not attorneys to negotiate a purchase of the equity of redemption of Kinney. They had never been employed for that purpose. Indeed, they had nothing to do with Kinney's equity of redemption, and a notice to them was not binding on Lœwenthal.

But the contract under which the premises were leased February 15, 1880, is relied upon. All the parties interested in the property, met,—Rosenberg, who had the master's deed, Lœwenthal, who represented Bauer, the bank and Schœllkopf, and Kinney, who had purchased the equity of redemption from Walker. These parties came together, and concluded that while the property was in litigation it would be better to have it docked and leased to some responsible parties, and consequently an agreement was made, which is set out in the record. It appears that during this meeting, Badger (who represented Jenkins) and Burgess were present, and the argument is, that the presence of Badger was enough to put Lœwenthal on inquiry. Jenkins did not execute the lease, and so far as is disclosed by the evidence Badger took no part in the negotiations. Neither he nor Burgess gave notice that Jenkins, assignee, claimed any interest in the property, and we do not think their presence was enough to put Lœwenthal or any one else on inquiry.

It is also claimed that a bill filed by Jenkins, as provisional assignee, in the United States Court, proves notice to Lœwenthal. This bill was filed after a final decree was rendered in the circuit court in the Bauer case, which attempted to

go over the same matters again. All the pleadings in the
Bauer case were set out. The bill was dismissed, and in
what manner the filing of such a bill could be regarded as
notice to Lœwenthal that Kinney held under two certain
deeds, merely as mortgagee, we are unable to perceive. In-
deed, we find no evidence in the record which is sufficient to
bring home notice to Lœwenthal that Kinney held as mort-
gagee. On the contrary, from the admissions, declarations
and acts of Walker, Jenkins and Kinney in regard to the
ownership of the property, any reasonable man would be led
to believe that the deeds from Walker to Kinney passed the
absolute title. Why did Walker set up in his answer that
he had conveyed the absolute title to Kinney, if such was not
the fact? Why did Jenkins, the assignee of Walker, permit
Kinney, without a word of dissent, to claim, mortgage and
contract for the improvement and leasing of the property for
a term of years, as the absolute owner, if he was but a mort-
gagee? Jenkins knew that Kinney claimed the absolute title,
—that he mortgaged and leased the property as owner,—and
yet not a word of dissent is heard until the sale is made to
Lœwenthal. From the manner in which this property was
treated by Walker, Jenkins and Kinney, any person who had
not actual notice to the contrary had a right to suppose that
Kinney was the absolute owner, and is entitled to be protected
under a deed obtained from him.

But, independent of this view, we are of opinion that the
action brought by the assignee was barred by section 5057,
Revised Statutes of the United States. This section of the
statute provides: "No suit, either at law or in equity, shall
be maintainable in any cause between an assignee in bank-
ruptcy and a person claiming an adverse interest touching
any property or right of property transferable to or vested
in such assignee, unless brought within two years from the
time when the cause of action accrued for or against such
assignee." Jenkins was appointed assignee on the 31st day

of July, 1878, but this action was not brought until May 27, 1881.   Did Kinney claim an adverse interest in the property, or, in other words, did he claim an absolute title as against Walker?   If he did, the assignee was bound to bring his action within two years.   From an examination of the testimony we think it is apparent that Kinney claimed title to the property long before Walker was adjudged a bankrupt. Before Walker filed his petition in bankruptcy, Kinney filed a bill in equity, in the United States Court, against the International Bank, Walker and others, in which he alleged absolute ownership of the property.   Walker, in his answer to the bill, admitted the title to be in Kinney.   This bill was pending when Jenkins was appointed assignee, and he was chargeable with notice of any fact in regard to the property known to Walker.   On the 1st day of March, 1878, Kinney mortgaged the property to Kyle & Dunham.   This mortgage was recorded April 6, 1878.   The mortgage contains a covenant that Kinney is the true and lawful owner of the premises. In his answer in the Bauer case, filed July 26, 1878, Kinney set up that he owned the lots in fee.   On the 19th day of June, 1878, Jenkins, as assignee, filed a bill in the United States Court, in which he set out the allegations in the Bauer bill, to the effect that he owned the premises, and he also set out Walker's answer, admitting the same thing. This bill he signed, and of course knew its contents.   These various acts claiming title to the property, which were known to Jenkins, required him, if he desired to contest Kinney's title to the property, to bring his action within two years.   It was not necessary that an adverse possession of the property should be established in Kinney,—it was enough that he claimed an adverse interest in the property, which was known to the assignee.   (*Bailey* v. *Glover*, 21 Wall. 342.) The language of the statute is plain, and in terms declares that no suit shall be maintained between an assignee and a person claiming an adverse interest touching any property or

right of property transferable to or vested in such assignee, unless brought within two years from the time the cause of action accrued. Here, at the time Jenkins was appointed assignee, he found on record two deeds conveying the property in fee to Kinney, and whenever the question of title arose he found him asserting title and Walker admitting it. It is true Badger testified that Kinney admitted to him, soon after Jenkins was appointed assignee, that he held as mortgagee; but this admission was not enough to overcome the various acts of ownership and claim of absolute title in Kinney, as established by the evidence. When Jenkins accepted the position of assignee, and found the property conveyed to Kinney by deeds absolute in terms, and found that Kinney had mortgaged the property as his own, and was asserting title to it in all respects as owner, if he desired to contest the title of Kinney the law required him to bring his action within two years. This he failed to do, and under the statute he was barred.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*