### WEST PORTLAND HOMESTEAD ASS'N *v.* LOWNSDALE, Assignee.

*(District Court, D. Oregon.*   July 20, 1883.)

1. **PLEA IN EQUITY.**
   A plea of the statute of limitations to a bill in equity is a pure plea, and need not be accompanied by an answer, unless the defense is anticipated by the bill, and some equitable circumstance is alleged therein for the purpose of avoiding the statute.

2. **LIMITATION IN SECTION 5057 OF THE REVISED STATUTES.**
   On September 6, 1871, G. and wife conveyed block 67 in Carter's addition to Portland to C., and on August 11, 1875, conveyed the same to the West P. H. A., and on February 19, 1878, L. was appointed the assignee in bankruptcy of C., and on March 27, 1883, was about to sell said block as said assignee, when said West P. H. A. brought suit against said assignee to enjoin said sale, alleging that the conveyance to C. was a mistake. *Held* that, under section 5057 of the Revised Statutes, the suit was barred by lapse of time, unless the mistake was not discovered until within two years next before the commencement of the suit, which did not appear to be the case.

Suit in Equity for Injunction.

*C. P. Heald,* for plaintiff.

*George H. Williams,* for defendant.

DEADY, J.   On March 27, 1883, the plaintiff, a corporation formed and existing under the laws of Oregon, brought this suit to have the defendant, as the assignee in bankruptcy of Charles M. Carter, perpetually enjoined from selling block 67 in Carter's addition to Portland.

The case was heard on a plea in bar to the bill, founded on the limitation contained in section 2 of the bankrupt act, (section 5057. Rev. St.,) which provides that—

"No suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest, touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee."

The facts stated in the bill necessary to an understanding of the case are briefly these:

On and prior to September 6, 1871, Joseph S. Smith, Charles M. Carter, T. J. Carter, and L. F. Grover were the owners in common of the unsold portion of the north-east quarter of the donation claim of Thomas and Minerva Carter, situated in township 1 S., range 1 W. of the Wallamet meridian, and bounded on the south by the east and west subdivision line of section ·4, in the township aforesaid; and, as such owners, on or before October 1, 1871, caused the same to be surveyed and· platted into blocks, lots, and streets, by numbers and names, as Carter's addition to Portland, and divided the same between themselves by deeds of partition, designating therein, according to said plat, the lots and blocks allotted to each; thaυ in the deed so executed to Charles M. Carter there is described block 67, "in Carter's addition," whereas at the date of such deed there was no such block in said addition, the designation of the same therein being a mistake, and without consideration between the parties thereto; that in October, 1871, said L. F. Grover and Elizabeth, his wife, caused to be surveyed and platted into blocks, lots, and streets, by numbers and names, a certain tract of land, owned in severalty by said Elizabeth, and adjoining the first-mentioned tract on the south as a part of said Carter's addition, one of which blocks is said block 67; that afterwards said Grover and wife, in conjunction with the other parties to said partition, executed a general plat of both said surveys and plats of Carter's addition, and acknowledged the same, which was recorded on November 4, 1871; that on August 11, 1875, said Grover and wife, for a valuable consideration, duly conveyed to the plaintiff said block 67; that at the date of such conveyance, and prior to the one to Charles M. Carter, said Grover and wife were in the exclusive possession of the said block and paid the taxes thereon, and the plaintiff since the conveyance to it has been and is now in the exclusive possession of the same, and has paid the taxes thereon; and the said Charles M. Carter was never in the possession of the same or paid any taxes thereon, "but was ignorant that said mistaken designation was in his deed."

The bill also alleges that the plaintiff purchased the premises in good faith, and that no creditor of said Carter was deceived by the fact; that said block 67 was included in said deed to him, and that the defendant, as assignee aforesaid, now claims to be the owner of the same, and as such is about to sell it at public auction.

On the argument the point was made that this was not a pure plea, and therefore it ought to be supported by an answer. Where the matter of the plea is anticipated by the bill as a release, but circumstances are also alleged that may avoid its effect, as that it was obtained by fraud or mistake, the plea is not a pure one. In such cases the plea must deny the circumstances, and be supported by an answer making a discovery touching the same. Story, Eq. Pl. §§ 674, 675. A pure plea is founded on new matter, not apparent on the face of the bill, or it is limited to a denial of some allegation therein, which goes to the foundation of the suit—as the fact of partnership. Story, Eq. Pl. §§ .660, 668.

The material facts contained in the plea appear on the face of the bill, except the recording of the deed aforesaid to Charles M. Carter on September 20, 1871, and the date—February 19, 1878—of the defendant's appointment as assignee in bankruptcy of said Carter; and if these two facts had been stated in the bill, the defense might have been made by demurrer.

The right to maintain a suit to correct the alleged mistake in the conveyance to Carter was not barred by the law of the state at the date of the appointment of the defendant as his assignee in bankruptcy, and therefore the qualification of section 5057, *supra,* that it shall not have the effect to "revive a right of action barred at the time when an assignee is appointed," has no application to the case. But I do not perceive that any attempt is made in the bill to anticipate this defense of lapse of time and avoid it, and therefore it seems to be a case for a pure plea of the statute—a simple statement of facts which show that the right to maintain this suit is barred because it was not brought within two years from the time it accrued.

The allegation concerning the possession of the premises in the mean time is not pertinent to this matter, as the right to maintain this suit is not affected by that fact, whatever weight it might have as evidence upon the question of mistake.   If the plaintiff is in the possession of the premises, and the defendant's right thereto is barred by the adverse occupation of the former and those under whom it claims, it may avail itself of that fact as a defense when the defendant or his grantee seeks to recover that possession.   So with the allegations of good faith on the part of the plaintiff, and the creditors of Carter not being deceived: they in no way excuse the delay in bringing this suit, or tend to avoid the bar of the statute.   Neither is the allegation of Carter's ignorance of the fact that block 67 was included in the conveyance to him material in this connection.   But if it had been alleged that the plaintiff was ignorant of the mistake, and did not discover it or become aware of it until within two years next before the commencement of this suit, that would be a circumstance sufficient to avoid the apparent bar of the statute, and to require an answer from the defendant in support of this plea, and a denial of the same therein; for in case of fraud or mistake a court of equity does not allow the statute to run until the discovery thereof.   Story, Eq. Pl. § 1521*a.*   And this rule has now been incorporated into the statutes of many of the states, including Oregon, (Code Civil Proc. § 378;) and in *Bailey* v. *Glover,* 21 Wall. 347, was applied to this very statute by the supreme court in a case of fraud, and by a parity of reasoning and authority would doubtless be similarly construed in a case of mistake.   See, also, *Nicholas* v. *Murray,* 5 Sawy. 324; *Carr* v. *Hilton,* 1 Curt. 390.   Counsel for the plaintiff also contends that the right to maintain this suit against the assignee did not accrue until the defendant set up a verbal claim to the property by advertising it for sale in March last, as the assignee in bankruptcy of Carter, and therefore the statute has not run.

But this view of the statute cannot be maintained.   The deed to Carter vested the legal title to the premises in him, and the conveyance by the register in bankruptcy to the defendant passed the same to the latter.   Under the subsequent conveyance by Grover and wife to the plaintiff, the latter only took what was then left in its grantor,

—the equitable estate, with the right to maintain a suit to correct the mistake and acquire the legal title. This, if anything, was certainly an "adverse interest," touching property subsequently vested in the assignee, and the plaintiff was thereafter "a person claiming an adverse interest" in such property. The right to maintain this suit against Carter accrued to the plaintiff as soon as it succeeded to the rights of Grover and wife in the property, and it accrued, as against his assignee in bankruptcy, as soon as the latter was appointed. The two-years' limitation then began to run, and had expired before this suit was commenced.

There are two absolute conveyances to this property from the same parties, and as only one can stand and have effect according to its purport, they are necessarily in conflict from the date of their existence, and the parties claiming under them are therefore claiming adversely to each other. This point was practically decided in *Bailey* v. *Glover*, *supra*, 346, in which the assignee brought a suit more than three years after his appointment, to set aside certain fraudulent conveyances made by the bankrupt just before filing his petition in bankruptcy. In delivering the opinion of the court, Mr. Justice MILLER says:

"Counsel for the appellant argues that the provision of the second section of the bankrupt act has no application to the present case, because it is not shown that the defendants have set up or asserted *any claim* to the property now sought to be recovered, *adverse* to that of the assignee. It is rather difficult to see what is meant by this proposition. The suit is brought to be relieved from some supposed claim of right or interest in the property on the part of the defendants. If no such claim exists, it does not stand in the way of complainant, and he does not need the aid of a court of equity to set it aside. If it is intended to argue that until some one asserts, in words, that he claims a right to property transferred to the assignee by virtue of the act, which is adverse to the bankrupt, the statute does not begin to run, though such person is in possession of the property, acting as owner, and admitting no other title to it, we think the construction of the proviso entirely too narrow."

True, there is no claim that Carter or the assignee was ever in the possession of the premises, and the contrary is alleged in the bill. But ever since September 20, 1871, the duly-recorded deed of Grover and wife, under whom the plaintiff claims by a conveyance of August 11, 1875, has, in contemplation of law, given notice and been a claim to all the world that Carter, and the defendant, as his successor in interest, had an interest in the premises adverse to any claim inconsistent with such deed. See, also, *Freelander* v. *Holloman*, 9 N. B. R. 331.

The plea is sufficient.