**SABOL, ADMR., ETC., Plaintiff-Appellant, v PEKOC, JR., Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20403.  Decided January 27, 1947.

H. E. Elliott, Cleveland, F. E. Picklow, Cleveland, for Plaintiff-Appellant.
J. H. McNeal, Cleveland, for Defendant-Appellee.

## OPINION

By SKEEL, P. J.

The plaintiff brings this appeal on questions of law from a judgment of the Court of Common Pleas of Cuyahoga County. The plaintiff, as administrator of the estate of Mary Sabol, deceased, instituted this action in the Court of Common Pleas on behalf of the next of kin of the deceased for their pecuniary loss occasioned by the claimed negligence of the defendant in causing the death of Mary Sabol.

The petition alleges that the defendant was the owner of certain premises located at 11433 Buckeye Road in the City of Cleveland and that the plaintiff, his family and the decedent, his mother, were tenants in said building; that the decedent was employed by the defendant as a janitress. On July 18, 1942, plaintiff's decedent was instructed to wash a certain skylight in an air well of the building which could be reached only by going through one of the windows of plaintiff's suite. That the decedent in carrying out the defendant's orders, went upon the skylight which gave way, causing her to fall to the floor of a storeroom below, whereby she was so seriously injured that she died on July 20, 1942. The plaintiff then alleges certain acts of negligence on the part of the defendant which he claims were the sole and proximate cause of decedent's death.

The plaintiff further alleges that the defendant at the time of the accident and on many occasions prior thereto, represented to the plaintiff and to plaintiff's mother that the said premises belonged to the defendant's mother and that he, Frank J. Pekoc, Jr., was only his mother's agent to collect the rents and manage the property and that after the death of said Mary Sabol the defendant for the purpose of fraudulently concealing the fact that he was the owner of said premises, reasserted to the plaintiff that his mother was the owner of the said premises and that she was well protected with insurance and that he wanted to see justice done, whereby the plaintiff was fraudulently induced to bring action against defendant's mother. That because of the defendant's conduct

in fraudulently concealing his ownership of the property the plaintiff did not discover defendant's ownership of the property until October, 1944, whereupon this action was filed on December 24, 1945.

The defendant filed a demurrer alleging that plaintiff's action was barred by the two-year statute of limitations. Upon hearing the court sustained the demurrer and after overruling a motion for a rehearing, entered final judgment for the defendant.

The only question of law presented by this appeal is whether or not the allegations that the defendant fraudulently concealed the cause of action against himself and by his fraudulent conduct induced the plaintiff to bring the action against another, if established, would as a matter of law prevent the defendant from claiming the benefit of the statute of limitations until the plaintiff discovered the fraud or until such time as the plaintiff in the exercise of due care should have discovered that the defendant was in truth the owner of the property and in fact the one whose negligence was the proximate cause of plaintiff's decedent's death.

In many jurisdictions this question is controlled by statute which generally provides that where the defendant fraudulently conceals the cause of action against him, the statute of limitations is tolled until a specified time after discovery of the fraud or a reasonable opportunity to discover the true facts. But there is no such statute in Ohio and what case law there is seems to be in conflict with such a rule.

The first time this question was considered in Ohio was in the case of **Fee, Admr. v Fee, 10 Oh St 469**, decided in the December Term, 1841. The syllabus provides:

"A fraudulent concealment by which the plaintiff has been delayed will not enlarge the time for bringing an action under the statute of limitations."

This action was for money had and received. One of the defenses was that the action was barred by the statute of limitations. The plaintiff's reply to this defense was that the defendant fraudulently concealed from the intestate during his lifetime that he had received the money and that said intestate had no knowledge that the defendant had received it. The defendant filed a demurrer to this reply. The court sustained the demurrer and on page 474 of the opinion, in attempting to distinguish conflicting authorities on the ground that those courts which hold that fraudulent concealment

prevents the party guilty of such conduct from claiming the benefit of the statute of limitations are those exercising equitable jurisdiction while courts of law are bound by the strict terms of the statute, says:

"The reason why a party may avail himself of the fraud in the former courts (Courts of Chancery) is well explained by Lord Redosdale, 2 Sch. 2nd Lef. 634. Although the statute, he says, does not in terms apply to suits in equity, it has been adopted there in analogy to the rules of law. And the reason which he gives why, if the fraud had been concealed by the one party until it has been discovered by the other, it shall not operate as a bar, is, that the statute ought not in conscience to run, the conscience of the party being so affected that he ought not to be allowed to avail himself of the length of time. But in a court of law the statute must necessarily receive a strict construction. That court cannot introduce an exception to the statute which the legislature has not authorized. In **Evans v Bicknell, 6 Ves. 174,** Lord Eldon in noticing the position of some of the common law judges in **Paisley v Freeman,** that if there was relief in equity, there ought to be relief at law, observes, that it was a proposition excessively questionable, and that it could only have been made from not adverting to the constitution and doctrine of a court of chancery. I agree with the opinion in **Troup v Smith** that as the statute declares that certain actions shall be commenced within a limited period, the courts of law possess no dispensing power whatever. The law of Ohio like that of New York, contains a saving in favor of infants, **feme coverts,** non residents and persons non compos, but it does not make fraud one of the exceptions. The true inquiry, therefore, at law is, when did the cause of action arise and not when did knowledge of that fact come to the plaintiff, or by what circumstances was he prevented from obtaining the information? These are questions which may be properly addressed to a court of chancery, but of which a court of law is bound to have no knowledge. **Troup v Smith** was also decided in a state which has a court of chancery and the bounds of the jurisdiction of the other court are therefore preserved.

Whatever may be thought of the propriety of having two tribunals administering a totally different law, yet so long as they exist, every motive of convenience and justice concur in securing to each its appropriate functions. They may be no other use in this arrangement than what arises from the great principle of the division of labor, in consequence of which all human exertion, whether it be of the mind or of the body,

is sure to be more vigorous and successful. When the rules of equity law were first introduced, they were only scattered exceptions to the general system of jurisprudence. They did not themselves constitute a system. They gained ground only occasionally, and by piece-meal. But at the present day equity law is as regular a scheme of jurisprudence and proceeds upon rules as completely settled, as those which are dispensed by the common law courts. To confound the distinction between the two tribunals now, would be not merely to invade a solitary and occasional exception to a rule but to overturn a whole system, and for that reason to introduce the greatest injustice into the administration of the law."

It is clear from the foregoing quotation that the court in the above case sustained the demurrer because it concluded that the action before the court was one at law and that the rules of the common law and not of equity must govern the rights of the parties. The court seems to have recognized that if the action was in equity the plaintiff would have been entitled to plead that the benefit of the statute of limitations could not be claimed by the defendant if he could establish that the defendant fraudulently concealed from him the facts which constituted his cause of action. Because of the grounds upon which it was decided the weight to be given to the above case is greatly impaired by the fact that after it was decided the **Constitution** of the **State** was amended (**Art. XIV Sec. 2**) and under it the Code of Civil Procedure was amended so that "the distinction between actions at law and suits in equity and the forms of all such actions and suits, are abolished; and in their place there shall be hereafter but one form of action which shall be known as a civil action." (**16 O Jur. page 26, Par. 8**). Sec. 11238 GC now provides:

"There shall be but one form of action to be known as a civil action. This requirement does not affect any substantial rights or liabilities, legal or equitable."

In the case of **Howk v Minnick, 19 Oh St 462**, the defendant stole gold and silver coins of great value from the plaintiff. The alleged theft took place on March 20, 1854 and the action was filed November 26, 1866 or twelve and one-half years later. The petition alleged that after stealing the property and converting it to his own use "the defendant fraudulently concealed such taking and concealed the coins from the plaintiff." The

defendant demurred on the ground, among other things, that the action was barred by the statute of limitations. The court sustained the demurrer and entered judgment for the defendant. The supreme court in sustaining such judgment, held:

"2. Prior to the Act of April 13, 1867 (S & S 541) amending Section 15 of the Code as to the limitation of actions, an action for the wrongful taking, by force, of personal property was barred in four years; and the fact that the taking was under circumstances constituting larceny, and that the defendant concealed his guilt from the plaintiff, did not prevent the running of the statute."

In coming to such conclusion, although the case referred to was decided long after the constitutional changes above referred to, the court relies strongly on the case of Fee v Fee, supra.

In the case of **The Minster Loan & Savings Co. v Laufers-wiler, 67 Oh Ap 375,** the action was for damages against former directors of the company because of ultra vires acts which were not discovered until after the statute of limitations had run. The court on **page 377** of the opinion says:

"With a view to avoid the bar of the statute of limitations to the several causes of action pleaded, it is alleged in the amended petition, 'that the defendants, knowingly, wilfully and with intent to deceive or cover up and conceal their negligent, illegal and ultra vires acts and the loss incurred by their acts (conducted themselves) in such a manner that the stockholders and/or depositors did not and could not, with the exercise of reasonable prudence, discover the same until on or about January 1, 1937.' Giving these allegations the most liberal construction they simply amount to a plea that the defendants fraudulently concealed from the plaintiff, until the date mentioned, the several causes of action against them. Whether there is evidence tending to prove the facts upon which this plea is based, it is unnecessary to decide since, if the plea is sustained by the evidence, it would not have the effect of enlarging the time for bringing the action under the provisions of §11224 GC, as that section prescribing that if the action be for fraud the cause thereof shall not accrue until the fraud is discovered, is by its terms made applicable only where fraud is the ground or gist of the action. Fee's Admr. v Fee, 10 Ohio 469, 36 Am. Dec. 103; Howk v Minnick, 19 Oh St

462, 2 Am. Rep. 413; Andrews v Dole, 1 Fed. Case 878 at 882; Amy v City of Watertown, 22 F. 418."

The court's conclusion in this case is based on the holding in the case of Fee v Fee, supra.

The great weight of authority is contrary to the holding of the foregoing cases, that is that one may take advantage of his own wrongdoing and seek refuge under statutes of limitations when he has by fraudulent conduct or representations successfully concealed his liability beyond the period of the statute.

One of the first cases to which reference is made by almost every court considering this question is Bailey v Glover, 88 U. S. 342. The claims of the plaintiff (who was the assignee in bankruptcy of Benjamin Glover) in this case were that Benjamin Glover was the judgment debtor of Winston & Company in the sum of $13,580.00; that Benjamin Glover owned assets of approximately $50,000.00. To avoid paying such judgment he transferred all of his property without any or grossly inadequate consideration, to his wife, his father in law and his son and then filed his petition in bankruptcy setting forth the judgment debt as his total liabilities and claiming to have no property except such as was exempt from execution. The plaintiff further claimed that the bankrupt, his wife, son and father in law kept their fraudulent acts secret and endeavored to conceal them from the knowledge of the plaintiff and Winston & Co. The action was not filed until three years and seven weeks after the appointment of the assignee in bankruptcy. The bankruptcy act provided that an action of the kind here under consideration must be brought within two years of the appointment of the assignee and it was the claim of the defendants that the action was barred under the provisions of this act. The court held: (syllabus 2, 3 and 4)

"2. Hence, the clause limiting the commencement of actions by and against the assignee to two years after the right of action accrues, applies to all judicial contests between the assignee and any person whose interest is adverse to his."

"3. But though this clause in terms includes all suits at law or in equity, the general principle applies here, that where the action is intended to obtain redress against a fraud concealed by the party or which from its nature remains secret, the bar does not commence to run until the fraud is discovered."

"4. And this doctrine is equally applicable on principle and authority to suits at law as well as in equity."

And on page 348 of the opinion, the court says:

"As the case before us is a suit in equity, and as the bill contains a distinct allegation that the defendants kept secret and concealed from the parties interested the fraud which is sought to be redressed, we might rest this case on what we have said in the undisputed doctrine of the courts of equity, but for the peculiar language of the statute we are considering. We cannot say in regard to this act of limitations that courts of equity are not bound by its terms, for its very words are that 'no suit at law or in equity shall in any case be maintained * * * unless brought within two years,' etc.;   It is quite clear that this statute must be held to apply equally by its own force to courts of equity and to courts of law, and if there be an exception to the universality of its language it must be one which applies under the same state of facts to suits at law as well as to suits in equity.

But we are of opinion, as already stated, that the weight of judicial authority, both in this country and in England, is in favor of the application of the rule to suits at law as well as in equity. And we are also of opinion that this is founded in a sound and philosophical view of the principles of the statutes of limitation. They were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure. And we see no reason why this principle should not be as applicable to suits tried on the common-law side of the court's calendar as to those on the equity side."

In 34 American Jurisprudence, 187 parag. 231, under the title "Concealment of Cause of Action" the rule is stated as follows:

"The reluctance of the courts to acknowledge exceptions additional to those contained in the statute of limitations is illustrated in some jurisdictions by the rule that a fraudulent concealment of the fact that a right of action existed does not

create an implied exception to the statute of limitations however harsh and inequitable the enforcement of the statute may be." * * *

"According to the majority rule, however, fraudulent concealment of a cause of action from the one in whom it resides, by the one against whom it lies, constitutes an implied exception to the statute of limitations, postponing the commencement of the running of the statute until discovery or reasonable opportunity of discovery of the fact by the owner of the cause of action; under this rule, one who wrongfully conceals material facts and thereby prevents discovery of his wrong or the fact that a cause of action has accrued against him is not permitted to assert the statute of limitations as a bar to an action against him, thus taking advantage of his own wrong, until the expiration of the full statutory period from the time when the facts were discovered or should, with reasonable diligence, have been discovered. Stated in another way, the general trend of the decisions is in support of the rule that where a party against whom a cause of action has accrued in favor of another, by actual fraudulent concealment prevents such other from obtaining knowledge thereof, or the fraud is of such a character as to conceal itself, the staute of limitations will begin to run from the time the right of action is discovered or by the exercise of ordinary diligence might have been discovered. This rule finds application most frequently in actions based upon fraud or in which fraud is the gist of the action, but it is by no means restricted to actions of that character; the rule applies regardless of the nature of the cause, if the requisite element of fraudulent concealment of the cause of action is present and it applies in actions at law as well as in suits in equity." * * * "The reasoning adopted in support of this view is that to hold that the statute of limitations ran against a person who had concealed the cause of action under such circumstances would be to permit the defendant to take advantage of his own wrong, and to sustain a defense of which in good conscience he ought not to be permitted to avail himself."

In The First Massachusetts Turnpike Co. v Jos. Fields et al, 3 Mass. 201, the court held:

"A fraudulent concealment by the defendant that a cause of action accrued to the plaintiff is a good replication to a plea of the statute of frauds."

The case of Lightner Mining Co. v Lane et al, 161 Cal. 689 (1911) is also illustrative of the majority holding on this question. In this case the defendant owned the mining property next adjoining the plaintiff's and in conducting his mining operation knowingly and wrongfully took out gold ore for a considerable distance under plaintiff's property which fact was not discovered by the plaintiff until a greater time had elapsed from the date of its actual removal than the period provided in the statute of limitations for trespass. The court held:

"A mine owner who, through the underground openings in his mine, secretly, knowingly and wilfully removes ore from the vein of an adjoining proprietor, without his knowledge or means of knowledge, is guilty of fraud, and to constitute a fraudulent concealment of such a trespass it is not necessary that the trespasser should take active measures to prevent detection. Under such circumstances the fraud conceals itself. In the present case the evidence is held sufficient to show a fraudulent taking and a fraudulent concealment of this character and to support the finding of the jury that the plaintiff did not discover, and was not put on inquiry concerning such trespass, until such time as would prevent the action from being barred by the statute of limitations."

"Such facts bring an action to recover for a trespass so committed within the rule above stated, and prevent the running of the statute until the trespass was discovered. They also make a case coming within subdivision 4 of Sec. 338 of the Code of Civil Procedure, relating to actions for relief against fraud."

The case of Rosenthal v Walker, 111 U. S. 183 had for consideration an action by the assignee in bankruptcy for assets of the estate of the bankrupt claimed to have been fraudulently concealed from him and were not discovered until the two year limitation of the bankruptcy act had passed. The court held:

"Where an action by an assignee in bankruptcy is intended to obtain redress against a fraud concealed by the party, or which from its nature remains secret, the bar of the statute of limitations, Rev. Stat. §5057, does not begin to run until the fraud is discovered. Bailey v Glover, 21 Wall. 342, cited and affirmed. Wood v Carpenter, 101 United States 135, and National Bank v Carpenter, 101 United States 567, distinguished."

The court said on pages 189-190 of the opinion:

"The judgment of the Circuit Court, by which it was held that these averments excused the failure to bring the suit within two years after the cause of action accrued, is sustained by the opinion and decree of this court in the case of Bailey versus Glover, 21 Wall. 342."

In the case of Karry v Frost (162 S. W. (2d) 48) Supreme Court of Arkansas 1942, the defendant while driving her husband's car, hit and injured the plaintiff and left the accident without identifying herself. Action brought against husband and upon trial of case in 1941 (accident happened in 1932) the testimony disclosed wife was driving for her own purposes, whereupon judgment was entered for the defendant (husband) and this action commenced against wife. On the defendant's claim that the action against the wife was barred by the statute of limitations the court held as disclosed by the syllabus:

"7. If there be fraudulent concealment of a cause of action, the statute of limitations does not begin to run until the fraud is discovered.

"8. In personal injury action, evidence that motorist failed to stop after striking plaintiff, and drove on and continued to live in vicinity raised question for jury whether motorist had by improper act of her own concealed from plaintiff his cause of action against her so as to preclude running of three-year statute of limitations."

See also Caldwell v Indian Territory Illum. Co. 104 P 2d, 239, Supreme Court of Oklahoma, where the court held:
Syllabus (a):

"Fraudulent concealment constitutes an implied exception to the statute of limitations and one wrongfully concealing material facts so as to prevent discovery of his wrong or the fact that a cause of action has accrued against him, will not be allowed to take advantage of his own wrong by pleading limitations."

We are not unmindful that the question of the postponing of the running of the statute of limitations because the cause of action was concealed by the defendant has just been passed on by the First District Court of Appeals sitting by assignment in the Eighth District, in the case of Samuel H.

Squire, Superintendent of Banks etc., v The Guardian Trust Company, et al, (decided January 20, 1947, and being No. 20317). The court found that the action was one in tort; the allegations of the petition being for the recovery of money lost by the bank because of the wrongful conduct of certain of the directors of The Guardian Trust Company. In overruling plaintiff's claim that the defendants could not claim the benefit of the statute of limitations because they concealed their wrongdoing the court under Paragraph 16 of the opinion held that the "facts alleged showing mere concealment are not sufficient therefore to toll the statute." The court relied on Fee v Fee; Howk v Minnick; Minster Loan & Savings v Laufersweiler, supra and **State ex rel Lien v House, 144 Oh St 238**, in coming to this conclusion.

The facts of all of these cases may be distinguished from those in the case now being considered in that here the allegations are that the defendant actively and purposely induced the plaintiff not to bring the action against him, by untruthful statements of fact which were fraudulently made for the purpose of concealing that he was in truth the owner of the property. A party should not be permitted to take advantage of and benefit by his own active wrongdoing.

The case of **McCampbell v Southard, 62 Oh Ap 339** clearly supports this view. In this case a fireman of Avon Village, while acting in the scope of his employment, in attendance at a fire, was in the act of directing traffic alongside a public highway in Avon Village. Two boards had been placed along side a hose laid across the street and it is alleged that defendant so carelessly drove his automobile across the boards as to cause one of them to strike plaintiff and injure him. After the accident the defendant gave his name as C. W. Southard, whereupon the plaintiff brought an action against C. W. Southard for damages. Upon the trial of the cause it was developed that the driver of the car was not C. W. Southard but was in fact the father of C. W. Southard living at the same address as his son. The original action was dismissed and a new action brought against the true defendant in which action the fraudulent concealment of his identity was alleged as a reason for the action being brought beyond the statute of limitations. The defendant demurred to the petition on the ground that the cause of action had been barred by the statute of limitations. The trial court sustained the demurrer. In reversing the trial court the Court of Appeals of Lorain County, held: (syllabus)

"The driver of an automobile which causes an injury to another on a public highway, who, in violation of §12606 GC

gives to the injured person the name of another instead of his own name, and thereby causes the injured person to institute suit against the wrong person, as a result of which the identity of the person driving said automobile is not learned by the injured person until the statute of limitations for the bringing of such action has expired, is estopped from asserting the statute of limitations as a defense in a subsequent action brought against him."

In the case of **Boehmke v Northern Ohio Traction Company** 88 Oh St 156, the plaintiff brought his personal injury action against The Akron, Bedford & Cleveland Company. That company had been merged with the defendant prior to the date of the accident although the cars bore the name of "Akron, Bedford & Cleveland." The defendant, by its attorneys, filed an answer on behalf of The Akron, Bedford & Cleveland Company and the fact that the plaintiff's action was against the wrong defendant was not discovered until after the time for bringing such action against the real defendant had passed. Whereupon plaintiff moved to substitute the Northern Ohio Traction Co., as defendant which motion was granted. The trial resulted in a verdict for defendant but a new trial was granted and upon a second trial a verdict was rendered for plaintiff. The Supreme Court held:

"Where one knows himself to be the wrongdoer sought to be made liable in an action of damages for the wrong, and voluntarily appears by his attorneys and answers in the name of and ostensibly as another person who. was by the plaintiff named as defendant, and served with process in the mistaken belief that the latter person did the wrong, the former person thereby submits himself to the jurisdiction of the court, and may be substituted as the real defendant in place of the nominal defendant sued by mistake; and the substituted defendant will be bound by the verdict and judgment rendered against him in the case.

"2. The statute of limitations will cease to run from the time the real defendant appears and answers in name of the nominal defendant."

We conclude, therefore, that the plaintiff's petition alleges sufficient facts which if established by the evidence would estop the defendant from claiming the benefit of the statute of limitations and the plaintiff would have the legal right to

proceed upon the merits of his claim.

The judgment of the Common Pleas Court is reversed and cause remanded with instructions to overrule said demurrer and for further proceedings according to law.

HURD J, MORGAN J, concur.