BAILEY, ASSIGNEE, *v.* GLOVER ET AL.

1. The policy of the Bankrupt law is *speedy* as well as *equal* distribution of the bankrupt's assets among his creditors, and the one is almost as important as the other. The delays in the inferior courts commented on.
2. Hence the clause limiting the commencement of actions by and against the assignee to two years after the right of action accrues, applies to all judicial contests between the assignee and any person whose interest is adverse to his.
3. But though this clause in terms includes all suits at law or in equity, the general principle applies here, that where the action is intended to obtain redress against a fraud concealed by the party, or which from its nature remains secret, the bar does not commence to run until the fraud is discovered.
4. And this doctrine is equally applicable on principle and authority to suits at law as well as in equity.

APPEAL from the Circuit Court for the Southern District of Alabama.

Bailey, assignee in bankruptcy of Benjamin Glover, and appointed as such December 1st, 1869, filed a bill on the 20th of January, 1873 (three years and seven weeks, therefore, after the date of his appointment) against Elenora Glover, wife of the bankrupt, Hugh Weir, his father-in-law, and Nathaniel Glover, his son, to set aside certain conveyances.

The bill alleged that Glover, the bankrupt, owed Winston & Co. $13,580, and that judgment had been obtained against him for that debt; that Glover was a man of fortune—pos-

sessed of at least $50,000 in different kinds of property—and owed no debt but the one just mentioned; that being thus entirely solvent and able to pay that debt, but fraudulently intending to avoid its payment by applying for the benefit of and getting a discharge under the Bankrupt law, he previously to applying conveyed, without any or upon grossly inadequate considerations, all his estate to the defendants; and then with fraudulent intent filed a petition in voluntary bankruptcy, setting forth that he owed the debt to Winston & Co., that this was the only debt which he did owe, and that he had no property or effects whatever except such as the law exempted from execution.

The bill further alleged that on his petition as aforesaid he was, on the 11th of April, 1870, discharged under the Bankrupt Act; Winston & Co. proving their debt as creditors; and he, the complainant, being appointed assignee in the bankruptcy.

The bill further alleged that the bankrupt and his wife, son, and father-in-law—these being the already-named defendants in the case—kept secret their said fraudulent acts, and endeavored to conceal them from the knowledge both of the assignee and of the said Winston & Co., whereby both were prevented from obtaining any sufficient knowledge or information thereof until within the last two years, and that even up to the present time they had not been able to obtain full and particular information as to the fraudulent disposition made by the bankrupt of a large part of his property.

It also alleged that the surviving partner of Winston & Co., in December, 1871, filed a petition in the District Court against the bankrupt in order to have his discharge set aside for this fraud, but before process could be served on the bankrupt he died.

These were the material allegations of the bill, and if true they showed, of course, a very clear case of fraudulent conspiracy, between the bankrupt and his family connections, to defraud the only creditor named in his petition—a scheme of gross fraud, in short—concealed by the defendants from

the knowledge of the assignee and from Winston & Co., against whom the fraud was perpetrated.

The defendants demurred to the bill, because the suit was not brought within two years from the appointment of the assignee, and their demurrer was sustained. This appeal was taken from the decree of the court dismissing the bill, and the sole question here was, whether on the case made by the bill this decision of the Circuit Court was right.

The second section of the Bankrupt Act of 1867, under which section the case arose, reads as follows:

"The Circuit Court shall have concurrent jurisdiction of all suits at law or in equity, brought by the assignee, against any person *claiming* an adverse interest; or by such person against the assignee touching the property of the bankrupt transferable to or vested in the assignee; but no suit at law or in equity shall in any case be maintainable by or against such assignee, or by or against any person *claiming* an adverse interest, touching the property or rights of property aforesaid, in any court whatsoever, unless the same shall be brought *within two years from the time of the cause of action accrued for or against such assignee.*"

*Mr. P. Phillips, for the appellant:*

The demurrer admits:

1st. That the defendants hold the property in fraud of the creditors.

2d. That they so concealed the fraud that the assignee only came to the knowledge of it within a year from filing the bill.

The question then is, whether the second section of the Bankrupt Act protects persons fraudulently obtaining property from the bankrupt, in the enjoyment of the fruits of their fraud, if they are able to conceal from the assignee the knowledge of their fraud for two years?

To answer such a proposition in the affirmative shocks one's moral sense, and if it is to prevail we must find in the words of the section instruction so explicit as to leave no room for construction. No such words exist there. We

submit rather that the action does not "*accrue*" while the fraud is concealed.*

Independently of this, the second section does not apply to the present proceeding. It refers to suits brought by the assignee "against any person *claiming* an adverse interest." The present fraudulent possessors of the bankrupt's property never made known their interest. The assignee by their concealment had no knowledge of their claim. The evident intention of the section was to apply the limitation when an adverse interest *was asserted.* In such a case it was only reasonable that a statute of limitation should exist. To apply it to an interest concealed, and of which the assignee could have no knowledge, would be unreasonable.

*Mr. S. J. Cumming, contra:*

The right of the complainant to bring this suit accrued on his appointment, and under the second section of the act he could bring it only within two years from the time the cause of action accrued. This bill was not filed until more than two years after the cause of action accrued; in fact, not until more than two years after the final discharge of the bankrupt. The eighth section of the Bankrupt Act of 1841 is similar to the second section of the act of 1867, now under consideration. On that section numerous decisions which would go to sustain the demurrer have been made.†

The bill attempts to take the case out of the statute by alleging that the fraud was not discovered until within two years before the filing thereof. The answer to this is twofold:

*First.* That the complainant does not, by the allegations of his bill, bring the case within the exception to the ordinary statute of limitations.‡

---

* Massachusetts Turnpike *v.* Field, 3 Massachusetts, 201; Homer *v.* Fish, 1 Pickering, 435; Welles *v.* Fish, 3 Id. 74; Sherwood *v.* Sutton, 5 Mason, 143.

† Comegys *v.* McCord, 11 Alabama, 932; Harris *v.* Collins, 13 Id. 388; Paulding *v.* Lee, 20 Id. 753; Clark *v.* Clark et al., 17 Howard, 315.

‡ Kane *v.* Bloodgood, 7 Johnson's Chancery, 122; Bank of the United States *v.* Daniel, 12 Peters, 56; Moore *v.* Greene et al., 19 Howard, 69; Harwood *v.* Railroad Co., 17 Wallace, 78.

*Second.* That the statute is imperative, admitting of no exceptions as to any tribunal, and consequently sets aside the rule invoked as to bankruptcy cases under the act.

Mr. Justice MILLER delivered the opinion of the court.

Counsel for the appellant argues that the provision of the second section of the Bankrupt Act has no application to the present case because it is not shown that the defendants have set up or *asserted any claim* to the property now sought to be recovered *adverse* to that of the assignee. It is rather difficult to see exactly what is meant by this proposition. The suit is brought to be relieved from some supposed claim of right or interest in the property on the part of the defendants. If no such claim exists, it does not stand in the way of complainant, and he does not need the aid of a court of equity to set it aside. If it is intended to argue that until some one asserts in words that he claims a right to property transferred to the assignee by virtue of the act, which is adverse to the bankrupt, the statute does not begin to run though such person is in possession of the property, acting as owner, and admitting no other title to it, we think the construction of the proviso entirely too narrow.

This is a statute of limitation. It is precisely like other statutes of limitation and applies to all judicial contests between the assignee and other persons touching the property or rights of property of the bankrupt transferable to or vested in the assignee, where the interests are adverse and have so existed for more than two years from the time when the cause of action accrued, for or against the assignee. Such is almost the language in which the provision is expressed in section 5057 of the Revised Statutes.

It is obviously one of the purposes of the Bankrupt law, that there should be a speedy disposition of the bankrupt's assets. This is only second in importance to securing equality of distribution. The act is filled with provisions for quick and summary disposal of questions arising in the progress of the case, without regard to usual modes of trial attended by some necessary delay. Appeals in some in-

stances must be taken within ten days; and provisions are made to facilitate sales of property, compromises of doubtful claims, and generally for the early discharge of the bankrupt and the speedy settlement of his estate. It is a wise policy, and if those who administer the law could be induced to act upon its spirit, would do much to make the statute more acceptable than it is. But instead of this the inferior courts are filled with suits by or against assignees, each of whom as soon as appointed retains an attorney, if property enough comes to his hands to pay one, and then instead of speedy sales, reasonable compromises, and efforts to adjust differences, the estate is wasted in profitless litigation, and the fees of the officers who execute the law.

To prevent this as much as possible, Congress has said to the assignee, you shall commence no suit two years after the cause of action has accrued to you, nor shall you be harassed by suits when the cause of action has accrued more than two years against you. Within that time the estate ought to be nearly settled up and your functions discharged, and we close the door to all litigation not commenced before it has elapsed.

But the appellant relies in this court upon another proposition which has been very often applied by the courts under proper circumstances, in mitigation of the strict letter of general statutes of limitation, namely, that when the object of the suit is to obtain relief against a fraud, the bar of the statute does not commence to run until the fraud is discovered or becomes known to the party injured by it.

This proposition has been incorporated in different forms in the statutes of many of the States, and presented to the courts under several aspects where there were no such statutes. And while there is unanimity in regard to some of these aspects there is not in regard to others.

In suits in equity where relief is sought on the ground of fraud, the authorities are without conflict in support of the doctrine that where the ignorance of the fraud has been produced by affirmative acts of the guilty party in concealing the facts from the other, the statute will not bar relief

provided suit is brought within proper time after the discovery of the fraud.

We also think that in suits in equity the decided weight of authority is in favor of the proposition that where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.*

On the question as it arises in actions at law there is in this country a very decided conflict of authority. Many of the courts hold that the rule is sustained in courts of equity only on the ground that these courts are not bound by the mere force of the statute as courts of common law are, but only as they have adopted its principle as expressing their own rule of applying the doctrine of laches in analogous cases. They, therefore, make concealed fraud an exception on purely equitable principles.†

On the other hand, the English courts and the courts of Connecticut, Massachusetts, Pennsylvania, and others of great respectability, hold that the doctrine is equally applicable to cases at law.‡

As the case before us is a suit in equity, and as the bill contains a distinct allegation that the defendants kept secret and concealed from the parties interested the fraud which is

---

* Booth *v.* Lord Warrington, 4 Brown's Parliamentary Cases, 163; South Sea Company *v.* Wymondsell, 3 Peere Williams, 143; Hovenden *v.* Lord Annesley, 2 Schoales & Lefroy, 634; Stearns *v.* Page, 7 Howard, 819; Moore *v.* Greene, 19 Id. 69; Sherwood *v.* Sutton, 5 Mason, 143; Snodgrass *v.* Bark of Decatur, 25 Alabama, 161.

† Troup *v.* Smith, 20 Johnson, 33; Callis *v.* Waddy, 2 Munford, 511; Miles *v.* Barry, 1 Hill (South Carolina), 296; York *v.* Bright, 4 Humphry, 312.

‡ Bree *v.* Holbech, Douglas, 655; Clarke *v.* Hougham, 3 Dowling & Ryland, 322; Granger *v.* George, 5 Barnewall & Cresswell, 149; Turnpike Co. *v.* Field, 3 Massachusetts, 201; Welles *v.* Fish, 3 Pickering, 75; Jones *v.* Caraway, 4 Yeates, 109; Rush *v.* Barr, 1 Watts, 110; Pennock *v.* Freeman, Ib. 401; Mitchell *v.* Thompson, 1 McLean, 9; Carr *v.* Hilton, 1 Curtis, 230.

sought to be redressed, we might rest this case on what we have said is the undisputed doctrine of the courts of equity, but for the peculiar language of the statute we are considering. We cannot say in regard to this act of limitations that courts of equity are not bound by its terms, for its very words are that " no suit *at law or in equity* shall in any case be maintained . . . unless brought within two years," &c. It is quite clear that this statute must be held to apply equally by its own force to courts of equity and to courts of law, and if there be an exception to the universality of its language it must be one which applies under the same state of facts to suits at law as well as to suits in equity.

But we are of opinion, as already stated, that the weight of judicial authority, both in this country and in England, is in favor of the application of the rule to suits at law as well as in equity. And we are also of opinion that this is founded in a sound and philosophical view of the principles of the statutes of limitation. They were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure. And we see no reason why this principle should not be as applicable to suits tried on the common-law side of the court's calendar as to those on the equity side.

While we might follow the construction of the State courts in this matter, where those statutes governed the case, in construing *this* statute of limitation passed by the Congress of the United States as part of the law of bankruptcy, we hold that when there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to

conceal itself, the statute does not begin to run until the fraud is discovered by, or becomes known to, the party suing, or those in privity with him.

The result of this proposition is that the decree of the Circuit Court sustaining the demurrer and dismissing the bill must be REVERSED, with directions for further proceedings,

IN CONFORMITY TO THIS OPINION.