## AVERY v. CLEARY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF MASSACHUSETTS.

No. 162. Argued December 13, 1889. — Decided January 6, 1890.

On the facts, as stated in the opinion of the court, it is *held*, that this suit is one between an assignee in bankruptcy and one claiming an adverse interest touching the property which is the subject of controversy, within the meaning of Rev. Stat. § 5057, prescribing a limitation for the commencement of such an action.

The omission by a bankrupt to put upon his schedules, or the omission by him or by his administrator to disclose to his assignee in bankruptcy the existence of policies of insurance on his life which had been taken out by him, and had, before the bankruptcy, been assigned to a trustee for the benefit of his daughters, does not amount to a fraudulent concealment of the existence of the policies, so as to take an action against the administrator (who was also guardian of the daughters) to recover from him the amount of insurance paid to him as administrator, out of the operation of the limitation prescribed in Rev. Stat. § 5057.

Mere ignorance of the existence of a cause of action by an assignee in bankruptcy does not remove the bar against such action prescribed by a statute of limitation; but, in order to set aside such bar, within the rule as announced in *Bailey* v. *Glover*, 21 Wall. 342, there must be no laches on the part of the assignee in coming to the knowledge of the fraud which is the foundation of the suit.

In the year 1867, the Connecticut Mutual Life Insurance Company issued three policies of insurance upon the life of Matthias Ellis, numbered respectively 68,428, 68,429 and 68,430, the first two being for $10,000 each, and the last for $5000. Each policy was payable to the executors, administrators and assigns of the assured, upon proof of his death.

On the 19th of May, 1877, the assured, in writing, transferred and assigned these policies, and all profits, dividends, non-forfeiture policies, money or other property that might arise from or be paid for or on account of them, to E. Rollins Morse, in trust, to pay the income, profits, or proceeds thereof to his two daughters, Helena and Marie. This assignment was lodged with the insurance company, though it does not clearly appear by whom, nor when, except that it must have been prior to March 1, 1879.

Ellis filed, July 3, 1878, in the District Court of the United States for the District of Kentucky, his petition in bankruptcy, and, having been adjudged a bankrupt, his estate was transferred by the register to Horace W. Bates, who acted as assignee until May, 1882. He was succeeded by the present defendant in error.

The schedules in bankruptcy made no mention of the above policies of insurance.

On the 1st day of March, 1879, policy 68,430 was surrendered to the company for the sum of $1054, which amount was applied in payment as well of the premiums due in that year on policies 68,428 and 68,429 as of future premiums, in cancellation of premium note or credit, and in discharge of the accrued interest on that note. The receipt showing the details of this transaction was signed by Ellis, and by Morse as trustee.

The bankrupt died November 21, 1879, and on the 31st of December in the same year the company paid to his administrator, the plaintiff in error, (he being also the guardian of the children of the assured,) the sum of $9390.43, the proceeds of policy 68,428, and $258.21 the balance of the surrender value of policy 68,430.

The present action was brought September 30, 1882, by the assignee in bankruptcy to recover from Ellis' administrator the sums so received by the latter. It proceeds upon the ground that the policies constituted part of the bankrupt's estate, and passed to his assignee. The declaration alleges that the existence of the policies was concealed and withheld from the assignee, and remained in Ellis' possession and control until his death, when they were taken possession of by the defendant, in his capacity as administrator, except that policy No. 68,430 had been surrendered by Ellis, on or about March 2, 1879; that the assignee in bankruptcy had no knowledge or information concerning the policies until shortly before the commencement of this suit, "the same being concealed by said Ellis in his lifetime, and since his death by his administrator; and that immediately upon being informed of the existence of said property he demanded the same or the proceeds thereof from the defendant."

The answer puts in issue the material allegations of the declaration, and pleads specially that the cause of action did not accrue to the assignee, nor against the defendant as administrator, within two years before the suing out of the plaintiff's writ.

The court refused to grant any of the defendant's requests for instructions, including one based upon the statute of limitations, and instructed the jury that the plaintiff was entitled to recover the two sums claimed by him, with interest on each from the date of the writ. A verdict was thereupon returned in favor of the plaintiff for the sum of $11,539.56, upon which judgment was rendered.

*Mr. Joshua D. Ball* (with whom was *Mr. Edward Avery* on the brief) for plaintiff in error.

*Mr. Eugene M. Johnson* (with whom was *Mr. Nathan Morse* on the brief) for defendant in error.

The third error assigned is: "That the court should have ruled that this action was barred by the provisions of § 5057 of the Revised Statutes of the United States (being the limitation of two years contained in the bankrupt law of the United States,) unless the defendant fraudulently concealed from Bates, the first assignee, the alleged cause of action, and that mere omission on the part of the defendant to disclose to Bates, the assignee, the facts, would not amount to a fraudulent concealment." The court was right in refusing to give this ruling.

Section 5057 of the Revised Statutes of the United States provides that no suit at law or in equity shall be maintainable in any court between an assignee in bankruptcy and a *person claiming an adverse interest* touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against said assignee. It has been expressly held that this section has no application to a suit against the bankrupt. *Clark* v. *Clark,* 17 How. 315; *Phelps* v. *McDonald,* 99 U. S. 298; *In re Conant,* 5 Blatchford, 54;

*French* v. *Merrill,* 132 Mass. 525 ; *Minot* v. *Tappan,* 127 Mass. 333.

Nor does it affect the right of the assignee to demand and receive from the bankrupt that which belongs to him by virtue of the assignment. The administrator takes no greater right in the property than the bankrupt had at his death ; his duty was to deliver it to the assignee ; he is not " a claimant other than the bankrupt," in whose favor the statute runs.

The fourth assignment of error is : " That the court should have ruled that mere ignorance on the part of the assignee in bankruptcy of the cause of action would not take the case out of the statute of limitations." Whereas the court refused so to rule. This ruling was rightly refused by the court.

The evidence in the case showed that the policies were omitted from the schedules. This was a concealment of the property by the bankrupt. *Re Goodridge,* 2 Nat. Bank. Reg. (Quarto ed.) 105 ; *Re Rathbone,* 2 Nat. Bank. Reg. (Quarto ed.) 89 ; *Re Hussman,* 2 Nat. Bank. Reg. (Quarto ed.) 140.

The evidence shows not a case of mere ignorance on the part of the assignee in bankruptcy, but a fraudulent concealment of property by the bankrupt.

The instruction asked was not called for by the facts of the case. *Dwyer* v. *Dunbar,* 5 Wall. 318.

MR. JUSTICE HARLAN, after stating the facts as above reported, delivered the opinion of the court.

It is provided by section 5057 of the Revised Statutes of the United States that " no suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest, touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee. And this provision shall not in any case revive a right of action barred at the time when an assignee is appointed." 14 Stat. 518, c. 176, § 2.

The court below was asked to rule that the action was

barred by this section, " unless the defendant fraudulently concealed from Bates, the first assignee, the alleged cause of action, and that mere omission on the part of the defendant to disclose to Bates, the assignee, the facts, would not amount to a fraudulent concealment. It was also asked to rule that mere ignorance upon the part of the assignee of the cause of action would not take the case out of the statute of limitations. If these instructions, or either of them, ought to have been given, the judgment must be reversed.

The first question to be examined is whether this is a suit "between an assignee in bankruptcy and a person claiming an *adverse* interest." It is contended that section 5057 has no application to a suit against a bankrupt, and, consequently, none to a suit against his administrator, who takes no greater right in property transferable to or vested in the assignee, than the bankrupt had at his death. Without stopping to examine the authorities bearing upon this proposition, it is clear that the rule contended for ought not to control the present case. More than a year prior to the bankruptcy of Ellis he had, by written assignment, transferred these policies to Morse, in trust to pay the income, profits, or proceeds thereof to the two infant daughters of the assured. That instrument was delivered to the insurance company many months before the death of the assured. This is manifest from the receipt taken by the company on the first of March, 1879, and which was signed by the assured and by Morse, as trustee. The company must have been aware at that time of the assignment. As it does not appear on what day the written transfer to Morse, for the benefit of the daughters of the assured, was delivered to the company, it may be argued that there is an entire absence of proof showing that Ellis had parted with his interest in the policies prior to his bankruptcy. Still, the daughters of the assured must be held as claiming an interest in the policies, adverse to the assignee in bankruptcy, at least from the time the written transfer to Morse, as their trustee, was lodged with the insurance company. That must have occurred as early as March 1, 1879, more than three years prior to the commencement of this suit.

This conclusion is not at all affected by the fact that Morse had no recollection, when he testified in this case, of ever having had in his possession the written transfer to him of May 19, 1877. His want of recollection cannot outweigh the fact that on the first of March, 1879, as trustee for the daughters of Ellis, he co-operated with the latter in surrendering policy 68,430, and in applying the amount allowed on account of such surrender, to the payment, among other things, of the premiums due and to become due on the other two policies. It is hardly to be supposed that he would have assumed to act as trustee, in matters of such importance, without knowing by whom, and for whose benefit, he was made such trustee. Besides, the rights of the daughters, under the above written transfer, did not depend upon his formal acceptance of the trust imposed upon him. Those rights would have been protected by a court of equity, even if he had declined to act as trustee.

Nor is it a material circumstance that Morse, after the death of Ellis, stated, in his letter to the insurance company of December 29, 1879, that he could not "find" any assignment of policies 68,428 and 68,429, and did not claim any interest in them. Neither his inability to find the assignment under which he had acted, nor his disclaimer of an interest in the policies, could affect the rights of Ellis' daughters. Further, it is quite manifest that this letter was written merely to facilitate the collection of the proceeds of the policies by the administrator, who was also the guardian of the infant children of the assured. Although the present suit is against the administrator, the latter, in respect to the policies in question, really represents his wards, to whom, so far as we can see from the present record, he must account for the moneys collected from the insurance company.

For the reasons stated, we are of opinion that within the meaning of section 5057 this is a suit between the assignee in bankruptcy and one claiming an adverse interest. It is, therefore, barred by limitation, unless it can be brought within the rule announced in *Bailey* v. *Glover*, 21 Wall. 342, 349. In that case the court, construing section 5057, said: "We hold

that when there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered by, or becomes known to, the party suing, or those in privity with him." See also *Rosenthal* v. *Walker*, 111 U. S. 185; *Traer* v. *Clews*, 115 U. S. 528.

The ground upon which the plaintiff claims exemption from the limitation of two years is that the schedules in bankruptcy omitted all mention of the policies in question, and that the fact that the policies existed was "concealed and withheld" by the bankrupt in his lifetime, and, since his death, by his administrator.

If it be assumed that Ellis had not, prior to his bankruptcy, delivered the assignment of May 19, 1877, and that his interests and rights in these policies were transferable to his assignee, the mere fact that he omitted any mention of the policies in his schedules in bankruptcy, and that neither he nor his administrator gave information of them to the assignee, would not establish fraud within the meaning of the rule announced in *Bailey* v. *Glover*. The omission from the schedules of any reference to the policies, and the failure to call the attention of the assignee to them, may have been caused by an honest belief, upon the part of Ellis, that they belonged to his children, or were not such property as the law required to be surrendered to the assignee; and, therefore, he lodged the assignment to Morse — possibly after his bankruptcy — with the insurance company. Be this as it may, the bankrupt's children are to be regarded as asserting an interest in the policies, at least from March 1, 1879, when the receipt of that date was executed. Fraud is not imputable to them, nor to the guardian, simply because neither they nor he informed the assignee in bankruptcy of their claims. Their silence, when they were not under any legal obligation to speak, and when they were unaware of any claim being asserted by the assignee, did not amount to concealment. They did nothing to prevent him from obtaining full information in reference to

the assets of the bankrupt. The record discloses no circumstance tending to prove that they sought to keep their claim from the knowledge of the assignee.

On the contrary, it appears in proof that Bates, the first assignee, was well acquainted with Ellis, and knew that, for many years prior to the bankruptcy, he had carried a large amount of insurance upon his life. It is true he says that he got the impression from conversation with Ellis that many of those policies had lapsed because of the latter's inability to pay the premiums. But he admitted that about the time of the bankruptcy he "learned indirectly that an assignment of some policy or policies had been made to E. Rollins Morse of Boston." He stated that his understanding with said Ellis was, "after learning of the assignment to E. Rollins Morse, that such policy or policies had some time previously passed from his control and were not a part of his assets in bankruptcy; that from such information as he, witness, received, he concluded there was no value to the creditors in such policy or policies." He acted upon this belief as to the situation, and forbore to make such inquiries as due diligence required. He did not cease to be assignee until May, 1882, nearly four years after his appointment, and more than three years after the written transfer to Morse, in trust for Ellis' daughters, had been lodged with the insurance company. If he did not know of such transfer, he could easily have ascertained what policies upon the life of the assured were in force at the time of the adjudication in bankruptcy. It is fundamental, in the rule announced in *Bailey* v. *Glover*, that there must not be negligence or laches upon the part of the assignee in bankruptcy in coming to the knowledge of the fraud which is the foundation of his suit, and which is relied upon to defeat the limitation of two years. A rigid enforcement of that condition is essential to meet the object of the statute of limitation. That object was to secure a prompt determination of all questions arising in bankruptcy proceedings and a speedy distribution of the assets of bankrupts among their creditors. A critical examination of the evidence leaves no room to doubt that, apart from any question as to concealment upon the part

of the bankrupt or of his administrator, the assignee did not show such diligence as entitles him to exemption from the limitation of two years prescribed by the statute. The court below would not have erred if it had given a peremptory instruction to find for the defendant upon the issue as to limitation.

The case presents another question raised by the defendant's requests for instructions, namely, whether, in view of the peculiar nature of contracts of life insurance, any interest which the bankrupt had in these policies — assuming that he had not, at the time of his bankruptcy, effectively transferred them for the benefit of his daughters — passed to his assignee. The defendant contended in the court below, and contends here, for the negative of this proposition, and insists that if any interest passed to the assignee, it was only such as was represented by the cash value of the policies at the time of the bankruptcy. We do not find it necessary to consider these questions, as what has been said will probably result in a disposition of the whole case under the issue as to the statute of limitations.

*The judgment is reversed, and the cause remanded with directions to grant a new trial, and for further proceedings consistent with this opinion.*