## DABNEY v. LEVY.

### No. 291, Docket 22002.

United States Court of Appeals
Second Circuit.

Argued June 13, 1951.

Decided July 10, 1951.

Writ of Certiorari Denied Nov. 26, 1951.
See 72 S.Ct. 177.

11. See, J. E. Haddock, Ltd. v. Pillsbury, 9 Cir., 1946, 155 F.2d 820, certiorari denied 329 U.S. 719, 67 S.Ct. 53, 91 L.Ed. 624.

202

Herbert Monte Levy, New York City, for appellant.

Harper & Matthews and Harold Harper, New York City, Vincent P. Uihlein, New York City, of counsel, for appellee.

Before SWAN, Chief Judge, and AUGUSTUS N. HAND and L. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The defendant appeals from a judgment obtained by the trustee in bankruptcy of the Associated Gas & Electric Company, appointed in a reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The action was to recover part of $21,000 paid to one Milton J. Milvy, a brother of the defendant, who had adopted that name instead of Levy. Milvy had received this sum in settlement of an action which Milvy had brought in the name of two shareholders of the Associated Gas & Electric Company, but in the right of that corporation. Milvy and Levy had entered into two contracts at or before the action was brought, the substance of which, taken together, was that the two had in contemplation bringing suits against some eleven corporations,—which by January 4, 1938, they had reduced to four. Milvy engaged "to do all the legal work" and "to act as attorney for the plaintiffs," and Levy was

"to render services as statistician and accountant," "to do the necessary research work, ascertain the facts and figures * * get the reports and papers" and "to devote sufficient time and to diligently apply himself to such cases and matters as will be referred to him, * * * to make written reports, testify in court if necessary and to do all things and work as will be required of him in such legal matters as Milvy will retain him to perform services." Milvy was to receive two-thirds of any gross fees that they might receive for both, and Levy one-third; and each was to pay his own expenses.

Milvy brought suit in the New York Supreme Court against the Associated Gas & Electric Company on the day of the second contract in the name of two shareholders, who together held 183 shares, but on behalf of all who might join. The gravamen of the suit was the mismanagement of the corporation by its officers who were parties to the action; and the suit was brought on behalf of the corporation. On July 7, 1938, without any order of the court, the corporation, through the same officers who were charged with misfeasance, and who were still in control of it, settled the action by paying to Milvy, as attorney of the plaintiff, $21,000, which came except for a trifling amount out of the treasury of a wholly owned subsidiary of the Associated Gas & Electric Company. This sum Milvy divided as follows: he gave a little over $200 to the two plaintiff shareholders, $6,000 to Levy and kept for himself the balance, apparently about $14,800. All this took place in 1938.

█ On January 10, 1940, the Associated Gas & Electric Company filed in the Northern District of New York a petition for reorganization under Chapter X of the Bankruptcy Act, which was at once "approved," and shortly thereafter was transferred to the Southern District; and on February 6, 1946, that court appointed the plaintiff trustee in bankruptcy. Both sides agree that the New York Statute of Limitations for such an action as that at bar is six years; hence it had not run when the petition was approved because the date of "adjudication" in a reorganization under Chapter X, is the date of approval of the petition.[1] On the other hand the action was commenced on June 28, 1948, nearly ten years after Milvy had received the money in settlement and distributed it to Levy. The case was tried to a jury, to which Judge Conger submitted five questions, which they answered as follows: (1). Levy received the money from Milvy knowing that it was part of the settlement of the action that Milvy had brought for the two shareholders. (2 and 3). Of the sum received by Milvy he gave Levy $6,000 between August 18th and November 9, 1938. (4 and 5). Neither the plaintiff nor his predecessor trustee learned, or could with due diligence have learned, that Levy had received the money before June 17, 1947, which was less than thirteen months before suit was brought.

█ Levy first argues that he was never liable to the corporation for the money received. Indeed he asserts that, when Milvy made the settlement the money that he received he did not hold upon a constructive trust for the corporation. It made not the slightest difference whether Milvy supposed that the money came from the corporation, although in that event the payment was plainly a conversion, or whether it came from the officers whose conduct created the claim of the corporation against them. If it had come from the officers sued, it was in consideration for a release of the corporation's claim. The claim discharged was as much the corporation's property as its factories or apparatus, and Milvy and Levy had no more right to take it as their fees, than they would have had to take the proceeds of any other sale. Clarke v. Greenberg, 296 N.Y. 146, 71 N.E.2d 443, 169 A.L.R. 944, alone is authority enough. See also Certain-Teed Products Corporation v. Topping, 2 Cir., 171 F.2d 241.

█ A faintly more plausible defence is that, even though Milvy may have received the money on a constructive trust, Levy was not charged with notice of it, and held

1. § 502, Title 11, U.S.C.A.

it as a bona fide purchaser, because of the assistance he gave to Milvy. That, however, ignores the agreement between them, which made the suit a concerted venture in the execution of which Milvy was to contribute the legal work and Levy the accounting. Not only were the two brothers to divide their fees which were contingent in the proportion of one to two, but Milvy was to consult Levy "in the event of settlement," they are both to work "on a contingent basis," and Levy was to do all that "will be required of him in such legal matters" as Milvy may retain him in. Thus their joint purpose included sharing in any contingent fee which Milvy might get upon the settlement of the suit, because Milvy did "retain" Levy. The jury found that Levy knew that Milvy paid him out of the money that Milvy had collected in settlement of that suit; it followed that, as he knew that Milvy was bound to "consult him" in the settlement, he also knew that he had as much of a proprietary interest in the settlement as Milvy, and that out of it alone was he to get a cent for any help he had given his brother. By what reasoning it can be supposed that he was not a joint constructive trustee with Milvy, we are at a loss to understand. We decline to dignify with an answer the argument that the plaintiff did not identify the actual cash which Milvy paid to Levy as part of the proceeds of the settlement.

■■ The only defence which deserves discussion is that of the Statute of Limitations. As has already appeared, the New York statute had not run on January 10, 1940, the date of the "adjudication," but Levy argues that the Bankruptcy Act[2] does not extend the period of limitation more than two years after the "adjudication." Therefore, he proceeds, we must always look at the local statute, and if that extends the time for suit by more than two years beyond the date of "adjudication," the suit must be brought within the time fixed by the local statute. Since the cause of action at bar arose at the latest in November, 1938, and since the limitation under New York law was only six years, the trustee had only until No-

vember, 1944; because the federal statute of two years did not extend the time beyond January, 1942, two years after January, 1940. As a new question it must be owned that this reasoning has much to commend it, but the Supreme Court has plainly written a gloss upon the section which is authoritative. Before adverting to that the plaintiff attempts to answer under the New York law, alleging that the claim was in "fraud," and that within the doctrine of Erie Railway Company v. Vanderbilt, 5 Hun 123, the limitation does not begin to run in such cases until the plaintiff learns that the money paid to settle the suit has come from the corporation's coffers and not from the guilty corporate officers. We do not find it necessary to decide whether the case at bar falls within § 48 (5) of the New York Civil Practice Act, or under § 48 (8), because we hold that it is within § 29, sub. e of Title 11 U.S.C.A. The interpretation which the Supreme Court has put upon the precursor of § 29, sub. e means much more than that the statute adds two years from the date of "adjudication." In Bailey v. Glover, 21 Wall. 342, 22 L.Ed. 636, it interpreted the precursor of this act in 1874 to mean that in cases of "fraud" the trustee always has two years from the time when he learns of the "fraud." Confusion has indeed arisen from the equivocal word, "fraud," which commonly, and indeed more properly, means that the wrongdoer has contrived to deceive his victim and by his deceit has induced the victim to take some action that has caused him loss. That was not the situation in Bailey v. Glover, supra, which was a straight case of "fraudulent transfer" by a bankrupt who while insolvent conveyed his goods to a grantee. There was no deceit; and deceit is never a necessary element in that action; indeed the bankrupt need make no attempt to conceal from his creditors what he is doing, nor need he reserve some interest in the goods for himself. All that is necessary is that he seek to convey an interest in his property to another at an inadequate price, or at no price at all: *i. e.*, to deprive his creditors of his goods. It was of such

---

2. § 29, sub. e, Title 11 U.S.C.A.

a situation that Miller, J., said in Bailey v. Glover, supra, "that where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud has been discovered, though there be no special circumstances or efforts on the part of the party, committing the fraud to conceal it," 21 Wall. at page 348, 22 L.Ed. 636. The situation there at bar was precisely like that now at bar. Each action was by an assignee, or trustee, in bankruptcy; each was assumed to be barred under the state law; each was to recover money which had belonged to the bankrupt and which the defendant had converted; in each the defendant had done nothing to cover up his guilt; in each the assignee, or trustee, had failed to discover the transfer within the period of limitation; and in each there had been no lack of diligence on his part in failing to do so.

Indeed it is not clear that the defendant at bar means to argue that if Bailey v. Glover, supra, had not been overruled, it would not apply to this cause, although it makes no difference whether he does or not. What he certainly does argue is that Avery v. Cleary, 132 U.S. 604, 10 S.Ct. 220, 33 L.Ed. 469, has overruled Bailey v. Glover, and if that be true, the appeal might take on a different aspect. Avery v. Cleary, was an action by an assignee in bankruptcy to recover property of the bankrupt which he had granted to another in trust for his children. The Court agreed that the suit was barred unless "it can be brought within the rule announced in Bailey v. Glover," 132 U.S. at page 609, 10 S.Ct. at page 222; but it thought the case was not within that "rule" for two reasons: (1) the assignee had known of the assignment for two years before he sued; and (2) the "silence" of the bankrupt's children, who were the beneficiaries of the trust, since "they were not under any legal obligation * * * and * * * were unaware of any claim being asserted by the assignee, did not amount to concealment." If Levy was "unaware" of any legal obligation, he was incapable of all moral sensibility; for he certainly knew that he and his brother had brought a suit on behalf of the corporation and that the corporation was not to get a cent out of the recovery. Even if the money had come out of the guilty directors, it did not belong to him and Milvy. Yet except for about $204—and even that did not go to the corporation—between them they took every cent for themselves. Could there be a more baseless appropriation of the *res* by constructive trustees?

However, even were there any basis for arguing that Avery v. Cleary overruled Bailey v. Glover, it would fail because of the unequivocal statements in later decisions. Thus in Exploration Company v. United States, 247 U.S. 435, 448, 38 S.Ct. 571, 573, 62 L.Ed. 1200, Day, J., said "Bailey v. Glover has never been overruled nor modified in this court and has been approved and followed", and among the decisions which he cited was Avery v. Cleary, itself. Moreover, in Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743. Frankfurter, J., in 1946 quoted the language of Bailey v. Glover in extenso; and then, although he was not speaking of the bankruptcy statute of limitation at all, went on to say, 327 U.S. at page 397, 66 S.Ct. at page 585: "This equitable doctrine is read into every federal statute of limitation. If the Federal Farm Loan Act had an explicit statute of limitation for bringing suit under § 16 [12 U.S.C.A. § 812], the time would not have begun to run until after petitioners had discovered, or had failed in reasonable diligence to discover, the alleged deception by Bache". This we take to mean that in cases of "fraud," used to include at least instances of the kind at bar, when Congress does not choose expressly to say the contrary, the period of limitation set by it only begins to run after the injured party has "discovered, or has failed in reasonable diligence to discover" the wrong. Avery v. Cleary, supra, was not such a case; at least both the opinion and later opinions did not treat it as an exception. Indeed it would be monstrous if so bare-faced a taking of this corporation's funds as is here displayed were to escape restitution because the confederates had succeeded in

keeping the transaction from detection for six years.

The defendant also complains of the allowance of interest from the date of the payment. The liability arose from a tort— the unlawful misappropriation of money belonging to the corporation by its attorney and his confederate Levy. The wrong did not depend upon any demand by the corporation; because it was a tort the money was due at the moment it was received. The two confederates, Milvy and Levy, received it under an implied promise to return it instanter. Flamm v. Noble, 296 N.Y. 262, 72 N.E.2d 886, 171 A.L.R. 812; United States Fidelity & Guaranty Co. v. Triborough Bridge Authority, 297 N.Y. 31, 74 N.E.2d 226. In Manufacturers Trust Co. v. Gray, 278 N.Y. 380, 16 N.E.2d 373, 117 A.L.R. 1176, the court held that the defendant, the incompetent's husband, was compelled to pay "at least" after the wife's committee was "compelled to pay," and it did not appear that it was so compelled until suit brought. Surely if ever a contract is to be "implied" instanter, this was a case for imposing § 48 of the New York Practice Act.

Judgment affirmed.