BRIGHAM CITY CORPORATION et al.,
Plaintiffs,

v.

GENERAL ELECTRIC COMPANY et al.,
Defendants.

PROVO CITY CORPORATION,
Plaintiff,

v.

GENERAL ELECTRIC COMPANY et al.,
Defendants.

No. C 16–62—C 28–62.

United States District Court
D. Utah,
Central Division.

Sept. 28, 1962.

Joseph L. Alioto, San Francisco, Cal., Brigham E. Roberts, Salt Lake City, Utah, Thomas S. Taylor, Dallas H. Young, Jr., Provo, Utah, for plaintiffs.

Calvin A. Behle, James Lee, George W. Latimer, Salt Lake City, Utah, Moses Lasky, Richard Haas, San Francisco, Cal., for defendant Westinghouse Elec. Corp.

Dennis McCarthy, Salt Lake City, Utah, for defendants Allis-Chalmers and McGraw Edison Co.

Peter W. Billings, Salt Lake City, Utah, Morris M. Doyle, San Francisco, Cal., for defendant General Elec. Co.

J. Thomas Greene, Salt Lake City, Utah, and R. Walston Chubb, St. Louis, Mo., for defendant Wagner Elec.

CHRISTENSEN, District Judge.

These consolidated cases are a few of a large number of similar civil antitrust suits which have been filed in various districts throughout the country as a result of criminal indictments returned in the United States District Court for the Eastern District of Pennsylvania and the consequent conviction by plea of various manufacturers of electrical equipment and some of their officers and agents.

The plaintiffs instituted the actions in this court in February, 1962, seeking treble damages under Section 4 of the Clayton Act (15 U.S.C.A. § 15) for alleged violations of Section 1 of the Sherman Act (15 U.S.C.A. § 1). Plaintiffs allege treble damage claims for alleged conspiracies "beginning at least as early as 1951 and continuing until sometime in 1960."

The complaint in C 16–62, after alleging the conspiracy and its effects states:

"15. Plaintiffs had no knowledge of the said combination and conspiracy, or of any facts which might have led to the discovery thereof, and they first became aware of the unlawful conspiracy by the return of indictments against defendants in 1960 by a United States Grand Jury. It could not have uncovered the conspiracy at an earlier date by the exercise of due diligence, inasmuch as the unlawful conspiracy had been fraudulently concealed by defendants through their adoption of elaborate schemes for submitting sham and collusive bids which misrepresented the independence and competitiveness thereof, and their resort to secrecy to avoid detection."

There are averments in the other complaints to similar effect.

The defendants in all actions have filed or joined in appropriate motions to strike or for partial summary judgment in assertion of their position that the four year period of limitations provided in Section 4B of the Clayton Act (15 U.S.C.A. § 15b) [1] bars portions of the respective claims for damages after taking into consideration the suspending effect of the Philadelphia proceedings pursuant to Section 5(b) of the Clayton Act (15 U.S.C.A. § 16(b)).[2] Whether it does depends upon whether there may be read into the basic four year period an additional exception not expressed in the statute but to be invoked by plaintiffs' allegations of "fraudulent concealment" or "secrecy". For the purposes of this opinion, Rule 9(b), Federal Rules of Civil Procedure, 28 U.S.C.A.,[3] may be disregarded and we shall assume that there are facts specified in the complaints to

1. "Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this section and sections 15a and 16 of this title shall be revived by said sections." (As added July 7, 1955, c. 283, § 1, 69 Stat. 283.)

2. "Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect of every private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: Provided, however, That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 of this title is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued." (As amended July 7, 1955, c. 283, § 2, 69 Stat. 283.)

3. "(b) In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

substantiate the conclusions to their full breadth.

Several United States district courts already have decided the precise question in similar cases and in almost the exact context in which it is presented here.[4] These well reasoned and documented decisions have rendered further treatment of the subject on the trial level largely unnecessary. A careful reading of them, and some additional study that has been given to the problem since it initially was presented, have not persuaded me that the tentative views [5] then indicated were in substance erroneous, however inartfully stated. Despite the plausibility of arguments supporting plaintiffs' position in view of a natural aversion to "concealment", fraudulent or otherwise, there are certain fundamental difficulties standing in the way of those arguments which my mind has not been able to circumvent or surmount. With the thought that these difficulties in prior decisions may not have been given due recognition or weight on the one hand, or sufficient emphasis on the other, I take the liberty of enumerating them without repeating the more comprehensive discussion set out in Judge Becker's opinion with which I generally agree.[6]

■■■ 1. Congress has the power, if it chooses, to enact a statute of limitations which is not subject to tolling or suspension for any reason. And it is for the Congress to weigh the morality or public policy which justifies such an enactment and not for the Courts, so long as Congress acts within its powers and the parties to a suit who seek to avail themselves of the benefit of such a provision have not barred themselves from relying upon the statute, irrespective of its true meaning, by conduct which invokes the established equitable doctrine of estoppel. Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959); Unex-

4. Atlantic City Electric Company, et al. v. General Electric Company, D.C.S.D. N.Y., 1962, 207 F.Supp. 613 (Judge Wilford Feinberg), consistent with plaintiffs' position; Public Service Company of New Mexico v. A. B. Chance Company et al., Civil No. 4924 D.C. New Mexico, July 31, 1962 (Judge Waldo H. Rogers), consistent with defendants' position; Kansas City, Missouri v. Federal Pacific Electric Company, No. 13,709–1 and rel. cases, D.C.W.D.Mo., 1962, 210 F.Supp. 545 (Judge William H. Becker), consistent with defendants' position; United States of America and Tennessee Valley Authority v. General Electric Company et al., No. 29491 and rel. cases, D.C.E.D.Pa., 1962, 209 F.Supp. 197 (Judge C. William Kraft, Jr.), consistent with plaintiffs' position; Commonwealth Edison Company et al., v. Allis-Chalmers Mfg. Co. et al., No. 61c 1277 and rel. cases, D.C.N.D.Ill., 1962, 210 F.Supp. 557, (Judge Edwin A. Robson), consistent with plaintiffs' position; Public Service Company of Colorado et al., v. Allen-Bradley Company et al., Civil No. 7349 and rel. cases, D.C. Colorado (Judge Alfred A. Arraj) consistent with plaintiffs' position.

5. At a pre-trial conference on June 29, 1962, I stated among other things: "Assuming that there will be differences in degree of concealment, wouldn't it be fair, though, to recognize that in most sub-stantial conspiracy cases, a pretty good showing of concealment could be made? So it would be rather difficult in most cases to draw a line, except maybe way over on the left side where there was very artful or determined concealment, and over on the other side where their work was kind of sloppy. * * * I'm clearly of the opinion that the statute of limitations therein provided cannot be deemed to have read into it the so-called doctrine of concealment or the doctrine of discovery or a conglomeration of those doctrines by which the fact finder or the Court would let the decision as to the application of the statute turn upon the degree with which either subjective intention or objective action with regard to concealment was applied or was present. * * * I'm going to tentatively make that ruling; and unless something is called to my attention which is controlling or reasons that persuade me otherwise, I'll pursue that position."

6. Fully concurring with the reasoning concerning the clear meaning of the statute on its face, the negating effect of the one expressed exception as to other exceptions, and the legislative history, I would not attach great weight to the distinction between "remedial" and "substantive" statutes nor (as he does not) to the punitive nature of treble damages.

celled Chemical Corp. v. United States, 345 U.S. 59, 73 S.Ct. 580, 97 L.Ed. 821 (1953); Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886).

2. The general language in Holmberg, supra, that, "This equitable doctrine [now claimed to be some "fraudulent concealment" doctrine] is read into every Federal Statute of Limitations," without which the contention of the plaintiffs would hardly be plausible, was mere dicta, was manifestly inaccurate as a generalization, was diametrically opposed to the principle recognized in the same case that Congress may provide if it chooses a limitation not subject to tolling, and did not even refer, expressly or by implication, to such a doctrine of "fraudulent concealment" as must now be relied upon by plaintiffs. It is the inexorable "every" which plaintiffs must strain to its fullest scope and the definitive "this" which they must extirpate from its textual antecedent to make much favorable to their position out of Mr. Justice Frankfurter's language. Moreover, if we look to the true doctrine of the cases, the line of authority in general, and this case in particular, it will be seen that they have reference to a situation essentially different [7] than that of the cases at bar in this court.

3. If it were to be assumed that some pervasive doctrine of "fraudulent concealment" must be, or could be, read into every statute of limitations, we need not stop to consider the difficulties and uncertainties that generally would be encountered but should be confronted at once in these cases based on Section 1 of the Sherman Antitrust Act by obstacles which appear insurmountable. Having no guidelines, such as those existing in causes of actions founded upon fraud or the accepted equitable principles of estoppel, we would have to fashion new criteria with reference to conspiracy cases. Assuming a conspiracy is established, would mere failure of the participants to disclose the conspiracy as a whole, or limited facts with reference to it, suspend the running of the statute? In some such cases, the conspiratorial compacts will be self-secreting; and these may be the ones in practice that prove the most effective, predatory, far reaching and damaging. If the conspirators by the transparent or questionable nature of the combination have to resort to fabrication of records, false communications, or similar tactics, the conspiracy could be of a type susceptible of discovery otherwise for such badges of wrong sometimes are the revelation of the basic wrong itself. Will we then let these suits for relief from the more subtle and effective conspiracies be barred at the

7. Bailey v. Glover, 21 Wall. 342, 88 U.S. 342, 22 L.Ed. 636 (1875), was a suit in equity seeking to have certain conveyances set aside as in fraud of creditors, and the Supreme Court referred to "fraud which is the foundation of this suit". This type of suit was involved in Avery v. Cleary, 132 U.S. 604, 10 S.Ct. 220, 33 L.Ed. 469 (1890); Traer v. Clews, 115 U.S. 528, 6 S.Ct. 155, 29 L. Ed. 467 (1885) and Rosenthal v. Walker, 111 U.S. 185, 4 S.Ct. 382, 28 L.Ed. 395 (1884). In Kirby v. Lake Shore & M. S. R. Co., 120 U.S. 130, 7 S.Ct. 430, 30 L.Ed. 569 (1887), a case involving fraudulent settlement of accounts, the doctrine was limited to cases "where relief is asked on the ground of actual fraud, especially if such fraud has been concealed", and the court said that in such cases time will not run "until the discovery of

the fraud, or until, with reasonable diligence, it might have been discovered." Exploration Co. v. United States, 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200 (1918) was an equity suit to cancel land patents procured by fraud. Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 532, 90 L.Ed. 743 (1946), supra, is the latest of this line of cases, and the application of the principle was not essentially different than in the prior cases. The case involved one Bache, who had been a shareholder in a joint stock land bank. Shortly prior to the bank's failure, Bache placed his shares in the name of Armbrecht for the purpose of hiding his ownership. The suit was treated both by the trial court and the Supreme Court as one to set aside a fraudulent transfer of title so that statutory liability could be imposed.

end of four years and keep claims as to others alive for ten, twenty, or thirty years or until the victims are demonstrably aware of the conspiracy? To what degree must concealment appear, and in what form, to amount to "fraudulent concealment". How will we instruct the jury; what standards for our own decisions? It is no answer to say that the courts have refused to set rigid boundaries for the doctrine of fraud, for we are not dealing with fraud as a doctrine but as a mere appellation attached to a root conspiracy and related concealment.

The short of the matter is that the statute of limitations under the doctrine of "fraudulent concealment" would be suspended in every conspiracy case without any limitation except for the provable discovery of the alleged victim. In my experience, indications of wrongful concealment or, if you please, "fraudulent concealment", often may be more readily established than the conspiracy itself; and it is not unusual for plaintiffs to rely upon inferences drawn from indications of concealment or misrepresenta-

tion, coupled with parallel action, when the conspiracy itself was not otherwise provable. There are few if any cases where a plaintiff could not plausibly ascribe his failure of discovery to concealment and could not with plausibility characterize such concealment as "fraudulent" within the meaning plaintiffs seek to have approved.

4. It is a fact beyond question that Congress rejected purposely a provision which would have suspended the running of the statute of limitations specifically with respect to conspiracies until the conspiracy was, or in the exercise of reasonable diligence or care could have been, discovered. This considered rejection cannot have been wiped out by statements on the floor of the house which if given plaintiffs' interpretation, would negate the very action which the committees of Congress and Congress clearly took.[8] If Congress rejected a so-called "discovery-due diligence" exception, which is conceded by all, it necessarily rejected a "fraudulent concealment" exception. Both would have had to be legislatively

---

Congressman Patman's position insisting upon the inclusion of the straight discovery exception which had been rejected was merely that of one member not in agreement with the report of the committee and the legislation it recommended. Congressman Celler stated positively that "the statute of limitations will start running from the time the action accrues, not from the time of discovery." That he added later that "in the case of fraud or conspiracy the statute of limitations only runs from the time of discovery", could have been nothing but inadvertent, and in any event could not change the fact of his prior statement nor the legislative history; nor could it engraft a new concept (still different than that relied upon by plaintiffs) to the effect that fraud or discovery would suspend the running of the statute irrespective of concealment on the one hand or the exercise of reasonable diligence on the other (See 101 Cong.Rec. 5132–33).

Apparently to counteract the fact that nothing otherwise appears in the legislative history to support the theory of "fraudulent concealment" as such, my attention has been directed to a colloquy between Congressman Celler and Con-

gressman Hale in reference to a prior bill (96 Cong.Rec. 10442) where Congressman Hale inquired if the bill would "affect any State statute concerning the effect of fraud or concealment on the period of limitation," and Congressman Celler said, among other things, that "Several states by statute or judicial decree provide for the tolling of the limitation period during the time the defendant fraudulently conceals the cause of action or is otherwise guilty of fraudulent conduct. * * * The period of six years, under this bill, will be uniform throughout the United States but the State rules benefitting a plaintiff in a case where the defendant has been guilty of fraud or other proscribed conduct will remain in effect." It is apparent that the federal statute could not be uniform and yet adopt in particular cases the rule in the state of the forum, accepting or rejecting the doctrine of "fraudulent concealment" in causes of action for fraud as such or in other cases. Whatever else may be in doubt, it is clear that the statute as enacted rejected the varying state rules in favor of a uniform federal statute.

imported from State decisions, based largely upon special State statutes. Yet even with respect to State authorities, limited mainly to causes of action based upon fraud, these concepts are closely related. While it is true that some have treated the concepts of "undiscovered fraud" and "fraudulent concealment" in relation to state statutes of limitation as different, any sharp distinction is largely artificial. In actual operation they are assimilated by a fundamental restriction that applies to both: that the statute will begin to run, not merely on actual discovery, but when the plaintiff might have discovered the existence of the claim by exercising reasonable care or diligence.[9] The so-called doctrine of fraudulent concealment can be neither expressed nor applied without reference to the principle of fraud undiscovered in spite of the exercise of reasonable diligence. On any sound and practical view of the problem, fraudulent concealment has a bearing on the statute of limitations only contextually with lack of knowledge on the part of the claimant after the exercise of reasonable diligence upon his part. The gist of the problem was not whether there would be concealment but whether by reason of concealment or because of the intrinsic nature of the wrongful conduct, or other circumstances, the claimant, despite reasonable care or diligence, could be deemed to have no notice of the wrong.

It is apparent from the face of the statute and its legislative history that Congress did not intend to adopt an exception to the running of the statute relating to failure, with or without reasonable diligence, to discover a conspiracy; nor is there any indication that Congress intended to separate the latter concept from the concealment incident common to most conspiracies.

5. The idea of reading into every statute the doctrine of "fraudulent concealment" has been disregarded in a decision of the United States Circuit Court of Appeals for the Tenth Circuit. State of Oklahoma v. American Book Co., 144 F.2d 585 (10 Cir. 1944), overruled on another point by Northwestern Lumber & Shingle Co. v. United States, 170 F.2d 692 (10 Cir. 1948), was an action to recover treble damages for alleged violation of the Sherman Antitrust Act, 15 U.S.C.A. Sections 1 to 7 inclusive. By an amendment to the original complaint it was alleged that the conspiracy was hidden and concealed and only came to the knowledge of the state within a year prior to the filing of the complaint. The Court of Appeals held that the claim was barred by limitation of the Oklahoma statute despite the allegation of concealment and lack of knowledge. It is true that in doing so it felt called upon to construe the Oklahoma statutes and to hold thereunder that the claim was not one for fraud, within the meaning of the statute that otherwise would have worked a suspension. It is also true that Holmberg, supra, followed American Book Co. and that there was no opportunity for our court to take note of Mr. Justice Frankfurter's broad language. But that language did not purport to represent any new doctrine and the prior cases upon which it was based were before the Tenth Circuit Court. American Book still stands as a complete answer to the argument for a general application in antitrust cases of the dicta in Holmberg. I do not regard the dicta in Holmberg for reasons heretofore stated as binding upon me while the essential doctrine of American Book Co. is so regarded.

It is interesting to contrast the American Book Co. case with American Tobacco Co. v. People's Tobacco Co., 204 F. 58 (5 Cir. 1913), where a contrary result was reached in interpreting a state statute of limitations in view of the supposed meaning of Bailey v. Glover, 21 Wall. 342, 88 U.S. 342, 22 L.Ed. 636 (1875), supra. This difference explains, I think, a line of subsequent decisions

9. See Dawson, "Undiscovered Fraud and the Statute of Limitations", 31 Mich.L.R. 591 (1933); Dawson, "Fraudulent Concealment and Statutes of Limitations", 31 Mich.L.R. 876 (1933).

580

of which Moviecolor Limited v. Eastman Kodak Company, 288 F.2d 80, (2 Cir. 1961), is an example, and to a degree Judge Feinberg's recent decision in which he considered Moviecolor to be controlling. Assuming that the doctrine of Moviecolor Limited controls district courts in that Circuit, it cannot be regarded as controlling here in view of the American Book Co. case.

6. The unmanageable and unwarranted doctrine of "fraudulent concealment" in reference to antitrust cases must not be confused with the recognized doctrine of estoppel, as recently exemplified in Glus v. Brooklyn Eastern Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), and Louisville & Nashville Railroad Company v. Disspain, 275 F.2d 25, (6 Cir. 1960); see also R. H. Stearns Co. v. United States, 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647 (1934). It is to be noted that these cases do not attempt to read any particular meaning into a statute through a process of judicial legislation but preclude reliance upon the benefits of a statute to avoid an inequitable result under the circumstances of the particular case and in accordance with established equitable principles. Here, while circumstances are alleged which smack of the foundations for an estoppel, they go rather toward a wholesale reformation of the meaning of the statute contrary to the Congressional purpose. There is here no conduct charged against the defendants which is separate from the very foundations of the alleged wrong itself, or which was designed to cause a change of position or the relinquishment of a right apart from the acts which afforded the statutory right of action. There was no relationship of trust or confidence involved and no special reliance claimed. There was no promise, express, implied or constructive to forego the benefits of the limitation period provided by the statute. Glus, supra, has been cited in support of the plaintiffs' contention that a "fraudulent concealment" exception must be read into the statute pursuant to Holmberg, supra, but, by ignoring the supposed doctrine

relied upon by plaintiffs, the Supreme Court in this and other cases has pointed up its frailties. Here there is no claim that the doctrine of estoppel would apply although this might be nearer the mark than the supposed doctrine of "fraudulent concealment".

In sum, I believe that the concept of "fraudulent concealment" relied upon by the plaintiffs for suspension of the four year statute as applied to conspiracy cases such as these, if finally accepted by the courts, would frustrate the clear Congressional purpose to enact a uniform federal statute of repose and would substitute a regime of ferment, conflict and interminable uncertainty. It would in fact extend dicta not justified by the language in context into a mandate for courts to judicially legislate. Not founded upon recognized principles of estoppel, nor susceptible of being sustained upon the theory of non-discovery with due care in actions for fraud, or upon any other principles recognized by the Supreme Court relating to the accrual of causes of action or the suspension of statutes of limitations, that supposed doctrine would invite general moral condemnation of conspiratorial agreements as sufficient social wrongs to justify the withholding by a court of the benefits of limitation statutes however phrased. The courts should not project themselves into such an unchartered field. Certainly they may not do so in view of contrary indications of the congressional intent reflected in the language and known purpose of the statute that would be immediately affected and its legislative history. If they should do so as a rule or policy the ultimate effect upon the law and upon the courts would be far reaching and profound.

For the foregoing reasons, in addition to, or supplementing, those already expressed in the decisions of Judge Becker and Judge Rogers, I am of the view that the operation of the four year statute of limitations provided in Section 4B and 5(b) of the Clayton Act would not be suspended by mere failure on the part of the plaintiffs to discover an al-

leged conspiracy, with or without due diligence or care on their part in view of the type of "fraudulent concealment" asserted by plaintiffs.

The related motions to strike and motions for partial summary judgment filed by the respective defendants accordingly should be granted. The order may indicate that conditions for an interlocutory appeal are present in the judgment of the court as contemplated by 28 U.S.C.A. § 1292(b). Counsel for defendants are directed to submit a proposed order in harmony with this opinion, to be settled upon notice or at the next scheduled pre-trial conference.